JOHN GOOD, Respondent, *v.* WILLIAM S. DALAND et al., Appellants.

The owner of a patent may not only neglect and refuse to make the patented article, but he may refuse to permit any one else to do so, on any terms; he may also sell to another the right itself, or agree with him that he will permit no one else to use it; and to make the agreement binding such other person need not agree to make the patented article or sell it.

The complaint herein alleged, in substance, that plaintiff, being the inventor and patentee of certain machinery, entered into an agreement with defendant D., as trustee, representing the corporation defendant and other corporations, who had associated themselves together under a name specified, and who had authorized D. to make the agreement as such trustee. By the terms of the contract plaintiff agreed that he would confine the use and sale of all his methods and machinery then and thereafter to be invented and patented by him to the members of said association, who, through D., covenanted to pay a certain percentage on all goods manufactured by them during the time they should have the exclusive use of plaintiff's machinery, provided he protected them in the same. In case of default upon the part of any of the members to make the payment to plaintiff, it was made the duty of D. to prosecute, and if he failed so to do, it was agreed that plaintiff might bring suit in D.'s name and at his expense. In an action under the agreement, the complaint alleged default on the part of said defendant, and that D., who was also made defendant, had refused to bring suit when requested by plaintiff. The complaint was demurred to on the ground of misjoinder of causes of action. *Held,* untenable; that plaintiff was not confined to bringing

an action in D.'s name, but could bring it in his own name, join D. as defendant and charge him with costs, because of his breach of duty.

Defendants also demurred upon the ground that the complaint failed to state facts sufficient to constitute a cause of action. In support of this it was claimed that the association of which the corporation defendant was alleged to be a member was a partnership, and the agreement was *ultra vires. Held,* untenable; that there was no averment in the complaint showing, or from which an inference could be drawn, that a partnership existed; on the contrary each member of the association contracted for itself through D. as trustee.

It was also claimed that the contract was void as in restraint of trade. *Held,* untenable.

(Argued January 27, 1890; decided April 15, 1890.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made December 9, 1889, which affirmed an interlocutory judgment in favor of defendants, entered upon an order sustaining demurrers to the complaint herein.

The complaint alleged in substance that defendant, the Tucker & Carter Cordage Company, a corporation duly organized with certain other corporations, became members of an unincorporated association known as the United States Cordage Manufacturers' Association of New York, by which said corporations authorized the defendant Daland to make in their behalf a certain agreement in writing, which the defendant Daland did.

The agreement, which was set forth in full, is made between John Good, the plaintiff, and William S. Daland "as trustee for the United States Cordage Manufacturers' Association of the city, county and state of New York." After reciting the ownership by Good of certain patented inventions and contemplated improvements, the agreement provides that Good will give to the association and its members the exclusive right to the use and sale of his inventions on the western continent, and will warrant and protect them therein. Then follows this clause:

"The defendant Daland then, as such trustee as aforesaid, for himself as such trustee and his successor or successors in

such trust, agrees that the members of said The United States Cordage Manufacturers' Association will pay to said John Good, in consideration of the above agreement and covenants on his part, one-eighth of one cent per pound on all manilla and sisal fibres worked by them into cords, twine or rope and offered for sale and use in the United States and sold and delivered during the time they shall have the sole and exclusive use of such machine as above agreed by said John Good, provided they are by him fully protected in such use as aforesaid; and, further, that the members of said association shall respectively submit to said Good monthly sworn statements of the quantity of such fibres so worked, sold and delivered by them during the preceding month."

Good, "for the more effectually securing the contract on his part," empowers Daland as such trustee, or his successor in the trust, to bring suit in his name and at his expense for the prosecution of infringements upon his patent, and appoints Daland his attorney in fact for this purpose. Daland, as trustee, agrees, "for the more effectually securing the contract on his part as such trustee," that "if said association, or any member thereof, make default in submitting a monthly sworn statement of the quantity of fibres worked, sold and delivered as above provided, or in payment of the sum above agreed, the said trustee shall promptly bring suit against such defaulting member and use all diligence in prosecuting an action for the collection thereof, and on failure on his part so to do, the said Good may, at his election, bring such suit in the name of said trustee at said trustee's expense."

The complaint, after alleging full performance by plaintiff of the agreement on his part, alleges that in the months of March, April, May, June and July, 1887, the Tucker & Carter Cordage Company having worked large amounts of fibres into cord, twine or rope, and sold the same in the United States, though requested, have failed and neglected to furnish plaintiff with any statement thereof, and that the amount thereof is unknown to him, and that no sum or percentage in respect of such fibres has been paid to him. That defendant

Daland, in compliance with the suggestion of the Tucker & Carter Cordage Company, has refused to bring suit for the collection of such percentage from that company in accordance with his agreement in that behalf, though requested by the plaintiff so to do, but claims that no cause exists for any such action.

The relief demanded is: (1) That the rights of the plaintiff and liabilities of defendant under the agreement may be established and declared. (2) That an accounting may be had of the fibres worked and sold in the United States by the Tucker & Carter Cordage Company during the months of March, April, May, June and July, 1887. (3) That judgment be rendered against defendant Daland for the agreed percentage on the amount thereof, or for such portion thereof as with due diligence he could have collected. (4) That judgment be rendered against the Tucker & Carter Cordage Company for said amount.

The defendants demurred to the complaint: (1) That causes of action were improperly united, *i. e.*, a cause of action for an accounting by the corporation defendant, a claim for damages against defendant Daland, and a money demand on contract against the corporation. (2) "That the complaint does not state facts to constitute a cause of action."

*Calvin Frost* for appellants. Two causes of action are improperly united in one complaint, and the separate demurrers on this ground should be sustained. (*Higgins* v. *Crichton*, 11 Daly, 114; *Barton* v. *Spies*, 5 Hun, 60; *Nichol* v. *Drew*, 94 N. Y. 22; *Hess* v. *B. & N. E. R. Co.*, 29 Barb. 391; *Sullivan* v. *N. Y. N. H. R. Co.*, 1 Civ. Pro. Rep. 286; *Wilsy* v. *Suydam*, 64 N. Y. 175.) The complaint does not state facts sufficient to constitute a cause of action. (Morawetz on Corp. 215; *W. Mills* v. *Upton*, 10 Gray, 582; *Marine Bank* v. *Ogden*, 29 Ill. 248; *M. R. C. Co.* v. *B. C. Co.*, 68 Penn. St. 173; *Bissell* v. *N. S. & N. I. R. Co.*, 22 N. Y. 258; *People* v. *N. R. S. R. Co.*, 3 N. Y. Supp. 408.) The agreement is void in that it is obviously designed in restraint

of trade and tends to create a monopoly. (*M. R. C. Co.* v. *B. C. Co.*, 68 Penn. St. 173.)

*Albert G. McDonald* for respondent. There is in the complaint no misjoinder of causes of action. (*N. Y. & H. R. R. Co.* v. *Schuyler*, 17 N. Y. 592, 604; *Brownson* v. *Gifford*, 8 How. Pr. 389, 396; *Cherry* v. *Monroe*, 2 Barb. Ch. 618, 627; *Brady* v. *McCosker*, 1 N. Y. 214, 221; *Wetmore* v. *Porter*, 92 id. 76, 80; *Many* v. *B. I. Co.*, 9 Paige, 188, 194; *Newland* v. *Rogers*, 3 Barb. Ch. 432, 436; *Carroll* v. *Roosevelt*, 4 Edw. Ch. 211, 213; *Raines* v. *Hollister*, 64 N. Y. 1; *Littell* v. *Sayre*, 7 Hun, 485; *Richtmyer* v. *Richtmyer*, 50 Barb. 55; *Getty* v. *Devlin*, 70 N. Y. 504, 511; *Lewis* v. *Varnum*, 12 Abb. Pr. 305; *Long* v. *Majestre*, 1 Johns. Ch. 305; *W. R. R. Co.* v. *Nolan*, 48 N. Y. 513; *Burroughs* v. *Elton*, 11 Vesey, 29, 35; *Lancaster* v. *Evors*, 4 Beav. 158, 165; *Gedge* v. *Traill*, 1 R. & M. 281; *Pearse* v. *Havitt*, 7 Simons, 471, 480; *Bangs* v. *B. R. R. R. Co.*, 45 How. Pr. 169, 181; *Strandart* v. *Burtis*, 46 Hun, 82, 85; *Colt* v. *Lesner*, 9 Cow. 320, 330.) The complaint sets forth a state of facts appropriate as against both defendants for an accounting in equity (*Ludlow* v. *Simond*, 2 Caines' Cas. 1, 38; *Mayne* v. *Griswold*, 3 Sandf. 463, 478; *Ellers* v. *Lockwood*, Clarke, 311; *Shepherd* v. *Brown*, 4 Giff. 208; *Makepiece* v. *Rogers*, 11 Jur. [N. S.] 314; *Adams' Appeal*, 113 Penn. St. 449, 457; *Hargrave* v. *Conroy*, 4 C. E. Green, 281, 284.)

PECKHAM, J. Although, perhaps, Daland was not a necessary party defendant to this action upon the agreement stated in the complaint, yet we think he was a proper party. As trustee for the various companies represented in the agreement, it was by that instrument made his duty to bring an action against any defaulting member, and to use all diligence in prosecuting it.

The plaintiff claims that the corporation defendant was a defaulting member and that it was the duty of Daland to prosecute it, but that he, upon request to bring an action for that purpose, refused so to do.

If the corporation defendant were in fact, as described in the agreement, a defaulting member, it was the duty of Daland to bring suit against it, and his refusal was a breach of that duty and of his agreement.

It is true the agreement provided that in case Daland failed to bring such suit, the plaintiff might at his election bring it in Daland's name and at his expense. But the plaintiff was not confined to bringing an action in Daland's name. He could bring it in his own name and join Daland as defendant, and charge him with costs because of this breach of duty. In this light there is no misjoinder of causes of action.

No cause of action is stated against Daland for damages in consequence of his failure to bring suit to collect the percentage due from the corporation defendant, when requested by the plaintiff.

The damages which the plaintiff had sustained by such failure cannot be ascertained from any allegation in the complaint, nor can it be said as matter of law, arising from the facts stated, that plaintiff sustained any damage. As there are not facts enough alleged upon which a good cause of action against Daland could be predicated on the ground of his failure to prosecute, it cannot be urged that two causes of action have been improperly united.

As other grounds for sustaining the demurrer, the defendants say that the unincorporated association, of which the corporation defendant is alleged to be a member, is a partnership and the agreement alleged is *ultra vires* the corporation. It is also stated that the agreement is void as in restraint of trade and as tending to create a monopoly. The complaint gives no information of the character of the association known as The United States Cordage Manufacturing Association of the City of New York.

There is nothing in that pleading which shows that the association is a partnership, and no inference to that effect can be drawn from the allegations which are therein set forth. All that can be learned from the complaint is that certain corporations have, for some purpose which is undiscov-

ered, associated themselves in some way together under a certain name. This is no allegation, either of partnership or indeed of any illegal action whatever. The agreement which is there set up is one which each member of the association authorized the individual defendant to make as trustee for the association, with the plaintiff. That agreement shows no partnership, but is an agreement that each member of the association will pay the plaintiff a certain price on each pound of manilla and sisal fibres worked by such member and offered for sale.

No member is responsible for anything but its own work, and its liability is based entirely upon the amount worked and offered for sale by itself. There is no community of profits or of losses provided for in the agreement, and no one member has any right to speak for or to bind any other member in regard to the subject-matter of the agreement. We can see nothing of a partnership nature set forth in the complaint.

The last objection urged, viz.: that the contract set forth in the complaint is in restraint of trade, cannot be supported.

It appears from the complaint that the plaintiff had invented and patented certain machinery and parts thereof for dressing fibres, spinning yarns and making twines and cordage from manilla and sisal fibres, for which he had obtained letters-patent from the United States. He agreed with the defendant Daland, as trustee for and representing the association already referred to, that he would in North and South America confine the sale and use of all his methods and machinery then or thereafter to be invented and patented, to the members of the association, who, on their part, covenanted through Daland to pay plaintiff a certain sum on all manilla and sisal fibres worked by them into cords, twine or rope, and offered for sale and use in the United States and sold or delivered during the time they should have the sole and exclusive use of the machinery above mentioned, provided they were fully protected in such use by the plaintiff.

It is true the members of the association do not agree to themselves use this machinery at all, nor do they agree as

to any special amount of twine or rope which shall, by each or all of them, be offered for sale, and the practical result is to take the machinery out of use, unless these members themselves use or permit others to use it.

This is a peculiarity of a patented article. The owner does not possess his patent upon the condition that he shall make or vend the article patented or allow others to do so for a fair and reasonable compensation. When he has once secured his patent, he may, if he choose, remain absolutely quiet, and not only neglect and refuse to make the patented article, but he may likewise refuse to permit any one else to do so on any terms. If the patent be a valuable one, self interest may be relied upon as a strong enough motive to induce the owner either to take himself, or to permit others to take some steps toward introducing his invention into use. How far it will go depends upon the owner, and his right to decide that question is not in the least circumscribed by the interests of the public in obtaining such machinery or invention, or a right to its use. He may keep such right himself, or make the machinery, or manufacture the patented article alone, or he may permit others to share such right with him, or he may allow them an exclusive right and retain none himself. It all follows from and is founded upon the absolute and exclusive right which the owner of the patent has in the article patented.

Having such right, he must plainly be permitted to sell to another the right itself, or to agree with him that he will permit none other than such person to use it. That person need not agree to make the patented article, or to sell it. It is a question solely for the parties interested. This right is necessary in order that the owner of the patent shall have the largest measure of protection under it.

Considerations which might obtain, if the agreement were in regard to other articles, cannot be of any weight in the decision of a question arising upon an agreement as to patented articles. If an owner of a patent should choose to refuse to manufacture the article covered by his patent, could any one else claim such right? His simple neglect or refusal

to manufacture would stand as a conclusive reason why it was not manufactured. An owner might sometimes make more money by not manufacturing than by doing so, but of that question he is the sole and absolute judge.

There is nothing in this agreement which can be regarded as illegal within the principles above stated, which are not in the least new or unknown. The plaintiff probably thought his inventions would prove sufficiently remunerative to him, if he sold the exclusive right to use them to the members of this association, even though they did not themselves agree to use the same in the process of the manufacture of cord or twine. His compensation was measured by the amount of cord and twine worked, sold and delivered by these members, and whether they should use his inventions, or keep them unemployed, was not thereafter a question of interest to him so long as the agreement remained in force.

We think the demurrers were not well taken.

The judgment overruling them should be affirmed, with costs, with leave to answer on payment of costs.

All concur.

Judgment affirmed.