stated, he had no power to withdraw or alter it, although its creation was an entirely voluntary act on his part. 27 Am. & Eng. Enc. Law, 310; Mabie v. Bailey, 95 N. Y. 206; Wallace v. Berdell, 97 N. Y. 13.

There is no pretense that all parties in interest ever united to discharge these mortgages from the trust imposed upon them by Allen Lasher, and it seems plain that such trust followed them into the hands of this plaintiff. As stated above, the main purpose of the trust was to protect the lands, which Samuel Decker had sold to Rost with warranty, from being sold under a foreclosure thereof, and this action the plaintiff has brought for the purpose of effecting that very sale. The grantees of such lands, who are protected by Decker's warranty against such a sale, are parties to this action, as are also Mary Decker and the estate of Samuel Decker, who is now deceased. Such grantees have an equity in the enforcement of such trust. Had the assignment of the mortgages been to Samuel, instead of to his wife, it would have inured to their benefit. Mickles v. Townsend, 18 N. Y. 575. Upon the same principle, the rights of Samuel Decker in the trust created for his benefit inured to their benefit, and they should be allowed to enforce them in this action. All of the defendants who have appealed from the judgment directing a sale of the property make their title from Rost, and are entitled, if ejected by such sale, to recover over against the estate of Samuel Decker. They should have been allowed, therefore, to invoke in this action the effect of the trust under which these mortgages were held by Mary Decker, and the judgment should have declared that as to these lands the mortgages could not be enforced. For this error, the judgment must be reversed.

Judgment reversed, referee discharged, and new trial granted, with costs to appellant to abide event. All concur.

(77 App. Div. 367.)

### CITY OF NEW YORK v. SIXTH AVE. R. CO. et al.

(Supreme Court, Appellate Division, First Department. December 19, 1902.)

1. STREET RAILROADS—MERGER—EFFECT—SUBSEQUENT LIABILITIES.
    Where a street railway company was merged into another corporation, which assumed all the obligations of the corporation merged, such corporation, while existing as a corporation, so far as existing creditors at the time of the merger were affected, became extinct as to all future transactions, and could thereafter create no new obligations, or be liable for the acts of the corporation into which it was merged.

2. SAME—LICENSE TAX ON CARS—ACTIONS—PLEADING—JOINDER OF CAUSES.
    Prior to the incorporation of the Sixth Avenue Railroad Company, its incorporators contracted with the city of New York to pay an annual license fee to the city for each passenger car to be "used on its road." The corporation was afterwards organized under an act authorizing it to construct its line as designated in the respective grants, licenses, resolutions, or contracts with the city; and thereafter a city ordinance was passed declaring that each and every passenger railroad car running in the city below 125th street should pay to the city the sum of $50 annually for a license. Thereafter the Sixth Avenue Railroad Company leased its lines to the Houston, West Street & Pavonia Ferry Company, which latter company was subsequently merged into the Metropolitan Street Railway Company, after which neither the Sixth Avenue nor the

Houston Company operated any cars previously operated by the Sixth Avenue Company. *Held,* that since, under the contract of the Sixth Avenue Company with the city, it was liable to pay only for cars it "used on its road," which liability terminated, as to it, on its lease to the Houston Company, and as to the latter on its merger in the Metropolitan Company, a complaint against the three companies, alleging such facts, to recover license fees for cars run on the road, stated a cause of action against the Metropolitan Company only, and was therefore not demurrable for misjoinder of causes.

Appeal from special term, New York county.

Action by the city of New York against the Sixth Avenue Railroad Company and others. From an interlocutory judgment overruling demurrers to the complaints, with leave to answer, defendants appeal. Reversed· in part.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Charles F. Brown, for appellants.
Chase Mellen, for respondent.

INGRAHAM, J. This action is brought to recover license fees for the cars used in the operation of the railroad owned by the Sixth Avenue Railroad Company. The complaint, after alleging the incorporation of the plaintiff, alleges that the defendant the Sixth Avenue Railroad Company is a street surface railroad organized and existing pursuant to the provisions of the general railroad act (chapter 140 of the Laws of 1850), and pursuant to the terms and conditions of a certain instrument in writing, dated September 6, 1851, executed by and between the mayor, aldermen, and commonalty of the city of New York, and certain persons, incorporators or assignors of said railroad corporation therein mentioned; that the defendant Houston, West Street & Pavonia Ferry Railroad Company is a street surface railroad corporation organized and existing under the general railroad act (chapter 140 of the Laws of 1850); that the defendant the Metropolitan Street Railway Company is a street surface railroad corporation organized and existing under the provisions of the general railroad law (chapter 565 of the Laws of 1890), having been incorporated on the 29th day of November, 1893, and May 18, 1894; that on or about February 1, 1892, the defendant the Sixth Avenue Railroad Company leased its lines of railroads and appurtenances in the city of New York to the defendant Houston, West Street & Pavonia Ferry Railroad Company, and that subsequently, and on December 12, 1893, the said Houston, West Street & Pavonia Ferry Railroad Company was duly consolidated and merged into and with the defendant the Metropolitan Street Railway Company; that at all times thereafter the defendant Metropolitan Street Railway Company has been in full possession and control of and has operated the lines of railroad, cars, and other property of the defendant Sixth Avenue Railroad Company; that in and by an instrument in writing dated September 6, 1851, between the mayor, aldermen, and commonalty of the city of New York and the persons, incorporators, or assignors of said Sixth Avenue Railroad Company, it was provided "that each of said passenger cars to be used on said

roads [meaning the cars used or to be used on the lines of railroad of said Sixth Avenue Railroad Company in the city of New York] shall be annually licensed by the mayor; and there shall be paid annually for such licenses such sum as the common council shall hereafter determine"; that on December 31, 1858, the common council of the city of New York duly adopted an ordinance which provided, "Each and every passenger railroad car running in the city of New York below 125th street, shall pay into the city treasury the sum of fifty dollars, annually for a license;" that during the years 1895 to 1899, inclusive, the defendant Metropolitan Street Railway Company used upon the lines of the said Sixth Avenue Railroad Company, below 125th street, in the city of New York, passenger cars for which there became due, and it became liable to pay annually during each of said years, various sums of money, of which, after deducting the amount paid by the said corporation, there was due to the plaintiff the sum of $7,700. The defendants demurred jointly to the complaint upon the ground that it appears from the face thereof that causes of action have been improperly united, and each defendant also demurred separately upon the ground stated in the joint demurrer, and also upon the ground that the complaint does not state facts sufficient to constitute a cause of action against it. This demurrer was overruled, and from the interlocutory judgment entered thereon the defendants appeal.

It is apparent that the complaint alleges no cause of action against the Houston, West Street & Pavonia Ferry Railroad Company. Its only relation to the property was through a lease of its railway and property made by the Sixth Avenue Railroad Company to the Houston Company, and that subsequently the Houston Company became merged with the defendant, and thus lost its corporate identity. While the corporate existence was retained so far as it affected existing creditors at the time of the merger, as to all future transactions it became extinct by the merger, and all obligations of the Houston, West Street & Pavonia Railroad Company were assumed by and imposed upon the corporation that took its place, and the Houston Street Railroad Company could after its merger create no new obligations, or be liable for acts of the corporation into which it had been merged; and the fact that there were obligations incurred after the merger could not create an obligation of the company that had lost its corporate identity in consequence of the merger.

In his brief upon this appeal, the learned counsel for the defendants states that the second ground of demurrer is not urged on behalf of the defendants the Sixth Avenue Railroad Company and the Metropolitan Street Railway Company. He does insist, however, that causes of action are improperly united, and, to sustain the demurrer on this ground, it must appear from the complaint that there are several causes of action alleged, and that they are improperly united in the complaint. If there is but one cause of action alleged against one of the defendants, and no cause of action is alleged against the remaining defendants, causes of action have not been improperly united. The cause of action that is alleged is based upon the obligation assumed by the acceptance of the Sixth Avenue Rail-

road Company of the franchise upon the conditions imposed upon it by its charter. The statute which granted to the Sixth Avenue Railroad Company its charter provided that:

"The respective parties and companies by whom such roads have been in part constructed, and their assigns, are hereby authorized to construct, complete, extend and use such roads, in and through the streets and avenues designated in the respective grants, licenses, resolutions or contracts under which the same have been so in part constructed, and to that end the grants, licenses and resolutions aforesaid are hereby confirmed."

Prior to the passage of this act a grant or contract had been executed between the mayor, aldermen, and commonalty of the city of New York, and the persons, incorporators, or assignors of the Sixth Avenue Railroad Company, in which it was provided that:

"Each of said passenger cars to be used on said road shall be annually licensed by the mayor; and there shall be paid annually for such licenses such sum as the common council shall hereafter determine."

By this agreement, it is "each passenger car to be used on said road" that is to be licensed, and for such license there was to be paid annually such sum as the common council should thereafter determine. It was therefore the cars to be used in operating the roads for which a license was to be obtained. There was imposed upon the incorporators no obligation, except for each car that was used in the operation of the railroad, and the only liability that the railroad incurred was a license fee for the cars so used. If the railroad company used no cars, it was under no obligation to obtain a license, and was not liable for the fees required therefor.

On December 31, 1858, the common council of the city of New York passed an ordinance which provided that "each and every passenger railroad car running in the city of New York * * * shall pay into the city treasury the sum of fifty dollars, annually, for a license." The effect of this ordinance was to fix the amount of the license fee that the Sixth Avenue Railroad Company was required to pay as a condition of the grant of the franchise which it acquired by operation of the grant from the city, which was confirmed by the legislature, and imposed no greater obligation upon the railroad company than was contained in the grant from the city. When, therefore, the railroad company ceased to operate its road, leasing its road and franchise to the Houston, West Street & Pavonia Ferry Railroad Company, it ceased to operate its road, and ceased to use cars for that purpose. The obligation upon this particular corporation to obtain a license for the cars used by its lessee, or to pay a license fee therefor, was no longer applicable to the Sixth Avenue Railroad Company, who used no cars in the operation of its road. That there was imposed upon the lessor company an obligation to obtain a license for the cars which it used in the operation of the road, and to pay a license fee therefor, is settled by the case of Mayor, etc., of City of New York v. Twenty-Third Street Ry. Co., 113 N. Y. 311, 21 N. E. 60. Judge Earl, in delivering the opinion of the court, there says:

"The entity called a 'corporation' consists of the sum total of all its charter powers and rights, and all its charter obligations and duties; and

such powers and rights cannot be effectually divorced from such obligations and duties. The latter are correlatives to the former, and constitute the consideration for the corporate franchises, and their performance may be exacted as a condition of corporate existence. Hence, when the defendant took the property, rights, privileges, and franchises of the Bleecker Street & Fulton Ferry Railroad Company, it took them burdened with its charter obligations. Taking the place of that company as to its charter powers and rights, it necessarily took its charter obligations and duties. It could not have exercised the former without discharging the latter."

The lessee company, having thus assumed the obligations imposed upon the lessor by its charter, was bound to perform such obligations; but as this obligation was imposed upon the Sixth Avenue Railroad Company only for the cars used in operating the road, when it used no cars in said operation, it was under no liability to pay the license fee therefor.

I think, therefore, that the only cause of action alleged in this complaint was a cause of action against the Metropolitan Street Railway Company for the license fees for the cars actually used by that company in the operation of the road; and for that reason this joint and the separate demurrer that causes of action were improperly united were properly overruled. ·

It follows that the judgment appealed from, so far as it overrules the joint demurrer of the defendants and the separate demurrers of the Sixth Avenue Railroad Company and the Houston, West Street & Pavonia Ferry Railroad Company, should be reversed, and the demurrers sustained, with costs in this court and in the court below, and that the judgment, so far as it overrules the separate demurrer of the Metropolitan Street Railway Company, should be affirmed, with costs, with leave to the Metropolitan Street Railway Company to answer on payment of costs in this court and in the court below. All concur.

(77 App. Div. 373.)

CITY OF NEW YORK v. TWENTY-THIRD ST. RY. CO. et al.

(Supreme Court, Appellate Division, First Department.   December 19, 1902.)

1. STREET RAILWAYS—MUNICIPAL REGULATION—LICENSE FEES—ORDINANCES—
    VALIDITY
      A city ordinance providing that every passenger car running in the city of New York below 125th street shall pay to the city the sum of $50 annually for a license, and prohibiting the running of cars without payment of the license fee, was not a police regulation, but was a mere imposition of a duty for the purpose of revenue, and was invalid in so far as it affected a street railway company, the franchise of which authorized the company to operate its cars without any other condition than payment of a certain percentage of its receipts.
      Van Brunt, P. J., dissenting.

Appeal from special term, New York county.

