In so holding special stress was laid upon the use of the word "any," and it was clearly pointed out that the words "any other" were broader and more comprehensive than the word "other" which is usually held to apply to things of a similar nature to those already described. People v. Richards, 108 N. Y. 137–150, 15 N. E. 371, 2 Am. St. Rep. 373. In the present statute we have the word "another," which is equivalent to "other." Furthermore, it was quite immaterial in Danziger v. Simonson whether or not a mortgage was included in the words "any other lien" as used in the statute, for in any case the defendant had lost his lien, because he had failed to file a notice of pendency of this action.

It follows that the order appealed from must be reversed, with $10 costs and disbursements to the appellant, and the motion to confirm the report granted, with costs to the Twelfth Ward Bank of the City of New York and John J. Dowling, payable out of the fund. All concur.

---

CITY OF NEW YORK v. THIRTY–FOURTH ST. CROSSTOWN RY. CO.

(Supreme Court, Appellate Division, First Department. April 8, 1910.)

1. TRIAL (§ 177*)—MOTION FOR DIRECTED VERDICT.

Where both sides moved for a directed verdict at the close of the evidence, whereupon the jury were discharged and an adjournment taken to a later day, when the court denied plaintiff's motion, plaintiff waived her right to go to the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 400; Dec. Dig. § 177.*]

2. TAXATION (§ 171½*)—CORPORATIONS—GROSS EARNINGS TAX—ESTOPPEL TO DISPUTE LIABILITY.

Where a street railroad company whose road was operated by a lessee, notwithstanding this filed gross earnings reports with the City Comptroller, and the city had received gross earnings taxes paid in accordance with such reports, the railroad company was not estopped thereafter to claim that it was not liable for such tax because it did not operate the road in resistance of the city's claim for more taxes on the theory that the reports were untrue, under the rule that there can be no estoppel unless the party asserting it has been induced by the representation relied on to change its position.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 171½.*]

3. TAXATION (§ 153*)—STREET RAILROADS—GROSS EARNINGS TAX—"GROSS EARNINGS"—OBLIGATION OF LESSOR—"GROSS RECEIPTS."

Laws 1884, c. 252, § 8, provides that every railroad corporation organized, constructed, or extended thereunder shall pay a 3 per cent. gross earnings tax for the year ending the next preceding 30th day of September, and, after the expiration of five years, shall pay a 5 per cent. tax. Held, that the term "gross earnings" as so used was synonymous with "gross receipts" to be derived from fares; and hence the statute should be construed as applicable only to the company operating a railroad so organized, and not to its lessor.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 153.*

For other definitions, see Words and Phrases, vol. 4, pp. 3167; vol. 4, p. 3174; vol. 8, p. 7675.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, New York County.

Action by the City of New York against the Thirty-Fourth Street Crosstown Railway Company. Verdict was directed for defendant, and plaintiff appeals. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Terence Farley, for appellant.

William M. Chadbourne, for respondent.

MILLER, J. This action is brought under section 95 of the railroad law (Laws 1890, c. 565) to recover 5 per cent. of the gross receipts of the defendant for the years 1903, 1904, and 1905, less the sum of $23,555.44, which the plaintiff admits has been paid. The defendant was formed by a consolidation of two street surface railroad corporations, organized under chapter 252, Laws 1884. It filed with the comptroller of the city reports for the years 1903, 1904, and 1905, containing a statement of gross receipts, and stating that it was obliged to pay the said 5 per cent. on such amounts or in the aggregate $23,555.44. The plaintiff claims that the gross receipts were not correctly stated, and that, in fact, they amounted to $1,550,281.90 for the years in question. The original answer admitted that the gross receipts during said years amounted to the sum alleged in the complaint, but by an amended answer the defendant denied that it operated the lines of railroad owned by it at all during the years in question. It appeared that on the 1st day of April, 1896, the defendant gave a mortgage to the Central Trust Company, and on the 21st of December, 1896, entered into an agreement with the Metropolitan Street Railway Company, whereby the latter guaranteed the payment of the principal and interest of the defendant's first-mortgage bonds, and in consideration thereof was granted the right to run cars over the defendant's road for 1,000 years. The defendant reserved the right to operate cars over its tracks, but agreed not to run more than three cars daily. On the 14th of February, 1902, the Metropolitan Street Railway Company leased its property, including the right to operate cars over the line of the defendant, to the Interurban Street Railway Company, whose name was in December, 1903, changed to the New York City Railway Company. It is practically undisputed that the defendant never ran any cars over its tracks after entering into the agreement of December 21, 1896. It did, however, make reports to the State Railroad Commissioners, indicating that it was operating its road, but there is no evidence that those reports were ever brought to the attention of the defendant, nor is there any evidence that the plaintiff did, or omitted to do, anything in reliance upon the reports filed with its Comptroller. It did appear that the Interurban, later the New York City Railway Company, paid the 5 per cent. of the gross receipts reported for the years in question as aforesaid. At the close of the evidence, both sides moved for the direction of a verdict. It was stipulated that the court might direct a verdict in the absence of a jury, the jury were discharged, and an adjournment was had to a later day, when the court denied the plain—

tiff's motion, whereupon the plaintiff asked to go to the jury. That motion was denied, and the defendant's motion granted.

It is contended that the admission in the original answer and the statements contained in the various reports, filed with the City Comptroller and the said Railroad Commissioners, raised a question of fact whether the defendant actually operated its road during the years in question; that it was therefore error to deny the plaintiff's motion to go to the jury. But such a motion could not be entertained after the jury had been discharged upon the plaintiff's consent. It is difficult to understand how the appellant can seriously argue that it did not waive the right to go to the jury.

It is next urged that the defendant is estopped by its reports, filed with the City Comptroller, to deny that it operated its road and received gross receipts therefrom during the years in question. It may be assumed that the city could have recovered perforce of said reports the amount of the charge shown by them to be payable; but that amount has been paid. The city based its claim in this action on the fact that those reports were untrue. There can be no estoppel unless the party asserting it has been induced by the representation relied upon to change his position. It is asserted that a suit against the operating company is now barred by the statute of limitations; but for all that appears in this record such a suit may now be pending. Moreover, this record indicates, what, of course, was the fact, that the city officials knew what company was in fact operating the road.

It only remains to determine whether the defendant is jointly liable with the operating company. Section 8, c. 252, Laws 884, so far as material, is as follows:

"Every corporation incorporated under, or constructing or operating a railroad constructed or extended under the provisions of this act, * *. * shall * * * pay * * * three per cent. of its gross receipts for and during the year ending the next preceding thirtieth day of September, and after the expiration of said five years, make a like annual payment * * * of five per cent., instead of three per cent. of said gross receipts."

As I understand it, the city does not dispute that the words "gross receipts," as used in the statute, mean receipts from the operation of the railroad; i. e., fares. Later on in the section the expression "gross earnings" is used as synonymous with "gross receipts." It would extend this opinion beyond reasonable limits to refer to all of the statutes, general and special, with reference to the payment of license fees or a percentage of gross receipts by street railroads. But an examination of them makes it manifest that, wherever the words "gross receipts" are used, they refer to receipts from operation, and those words as thus used have been construed to mean "fares." Mayor v. Twenty-Third Street R. R. Co., 113 N. Y. 311, 319, 21 N. E. 60. It is plain, then, that the defendant did not have any gross receipts within the meaning of the statute during the years in question.

It will be noticed that the statute specifies in the alternative the corporations liable for the payment of the charge. Each is required to pay a percentage of "its gross receipts." Neither is required to pay a percentage of some other corporation's gross receipts. It seems to

me plain, therefore, that only the corporation having gross receipts from operation of the road is liable to pay a percentage thereon to the city. While the defendant by the agreement of 1896 did not absolutely surrender its chartered rights and privileges, as was the case in Mayor v. Twenty-Third Street R. R. Co., supra, the practical effect of the arrangement was the same. True, that case did not decide that the lessor company was relieved from the obligation imposed by the statute under which it was organized to pay 1 per cent. of the gross receipts from the operation of its road, but the lessee company was only held liable upon the theory that the obligations of the lessor had devolved upon it. The situation in this case is somewhat different. Here the operating company is liable perforce of the statute, and it seems to me impossible to construe the statute so as to impose a joint obligation on both the owning and the operating company. While a somewhat different question was involved in City of New York v. 6th Ave. R. R. Co., 77 App. Div. 367, 79 N. Y. Supp. 319, the decision in that case tends to support the conclusion which I have reached in this.

It may be said that it is difficult to perceive the practical importance of this action, in view of the fact that the percentage of gross receipts, required to be paid, is to be deducted from the special franchise tax. Heerwagen v. Crosstown R. R. Co., 179 N. Y. 99, 71 N. E. 729.

The judgment should be affirmed, with costs. All concur.