MADDEN et al. v. SHANE et al. (No. 969.)

(Court of Civil Appeals of Texas. Amarillo. April 19, 1916. On Motion for Rehearing, May 10, 1916.)

1. BROKERS ⊙⇒56(3)—LIABILITY FOR COMMISSION—DUTY TO INQUIRE AS TO PURCHASER.

The owner of property who had given plaintiff the exclusive agency for its sale on a commission under a stipulation that, if the property was sold before the expiration of the contract to any person whose attention was called thereto by such agent while acting thereunder, the commission would be paid, and who after the contract expired was informed by the plaintiff that certain parties to whose attention plaintiff had brought the property intended to purchase it through a "straw man," and that, if so, he would sue all of them for fraud, was bound to inquire of the purchaser as to his attitude toward the purchase so as to have led to the discovery that the real purchasers were parties to the transaction.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 86–89; Dec. Dig. ⊙⇒56(3).]

2. BROKERS ⊙⇒82(1) — COMMISSION — ACTION ON CONTRACT.

Allegations in a broker's action for a commission that defendant had placed his property with plaintiff as the exclusive agent for its sale on a commission, with the stipulation that, if it was sold after the expiration of the contract to any person whose attention had been called thereto by the agent, the commission would be paid, and allegations of a conspiracy of the owner and purchasers to defraud the agent out of the commission, that the defendants purchased the property, that under the terms of the contract plaintiff was entitled to the commission, and that prior to the sale the owner was informed that a straw man was to purchase it for the real purchaser, were sufficient to permit a recovery against the owner on contract.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 101; Dec. Dig. ⊙⇒82(1).]

3. BROKERS ⊙⇒85(1) — ACTION FOR COMMISSION—EVIDENCE.

In such case evidence as to the method of purchase through a straw man at the instigation of one of the defendants with the knowledge of the real purchasers and of plaintiff's warning to the owner that a straw man was contemplated was admissible, so far as the owner was concerned, notwithstanding the action against him on the contract was joined with an action in tort.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 106, 108, 110, 115; Dec. Dig. ⊙⇒85(1).]

4. ACTION ⊙⇒50(1) — MISJOINDER — CAUSES AND PARTIES.

Where but one cause of action is alleged against one of the defendants, and no cause of action is alleged against the remaining defendants, there is in reality no misjoinder.

[Ed. Note.—For other cases, see Action, Cent. Dig. § 511; Dec. Dig. ⊙⇒50(1); Vendor and Purchaser, Cent. Dig. § 766.]

5. PARTIES ⊙⇒92(3)—PLEADING ⊙⇒193(6)—MISJOINDER—DEMURRER.

In an action on a contract to recover a broker's commission for the sale of property, joined with an action of tort against the owner and other parties for defrauding the broker of

his commission, a demurrer on the ground of a misjoinder of parties and causes of action was properly overruled, as an element entering into the objection against a joinder of different parties and of different causes of action involves a complication of issues confusing to the jury on the merits of the case.

[Ed. Note.—For other cases, see Parties, Cent. Dig. § 150; Dec. Dig. ☞92(3); Pleading, Cent. Dig. §§ 434, 435, 494; Dec. Dig. ☞ 193(6).]

6. PARTIES ☞96(1)—PLEADING ☞406(8)—
MISJOINDER—WAIVER.

A misjoinder of parties or causes of action may be waived.

[Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 167, 169, 170; Dec. Dig. ☞96(1); Pleading, Cent. Dig. §§ 1370, 1371, 1405; Dec. Dig. ☞406(8).]

7. BROKERS ☞94 — LIABILITY FOR COMMIS-
SION—PURCHASERS.

Where plaintiff had the exclusive agency for the sale of property, and was to be entitled to his commission if it was sold after the expiration of the contract to any one whose attention had been called thereto by the agent during the contract, and before the contract expired had called the attention of defendants to the property and they, through another defendant and a straw man, finally negotiated for and purchased the property, and where, even if the broker's right against the owner accrued, if he knew or should have known that defendants were the purchasers, the defendants were not liable in an action of tort for defrauding the broker of his commission.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 136; Dec. Dig. ☞94.]

On Motion for Rehearing.

8. APPEAL AND ERROR ☞934(2) — PRESUMP-
TIVE FINDINGS—CONSIDERATION—STATUTE.

Under Rev. St. 1911, art. 1985, the Court of Civil Appeals must presume that the trial court's findings, if sustained by the evidence, support the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3777; Dec. Dig. ☞934(2).]

Appeal from Grayson County Court; Dayton B. Steed, Judge.

Action by George R. Shane and others against J. W. Madden and others. Judgment for plaintiffs, and defendants appeal. Affirmed as to the defendant Madden, and reversed as to the other defendants.

Wolfe & Wood, of Sherman, and John T. Suggs, of Denison, for appellants. Webb & Webb, of Sherman, for appellees.

HENDRICKS, J. On the 15th day of July, 1912, J. W. Madden appointed the George Redwood Shane Company his exclusive agents for a limited time to sell certain residence property owned by him in the city of Denison, Grayson county, Tex., for the sum of $6,000, or such lower price as he may agree to accept, upon a 5 per cent. commission on the total selling price of the property. It is also stipulated that in case the property was sold after the expiration of the contract "to any person whose attention was called thereto by said agent or associates while acting under this contract" the commission would be paid. During the pendency of the contract the real estate brokers called the at-

tention of H. R. Thompson and Garnet R. Love to the property for the purpose of interesting them as prospective purchasers of the same. This exclusive contract expired the 9th day of August, 1912, and on the 16th day of October following, Madden deeded the property to one L. M. Tuck, who thereafter immediately deeded said property to Love and Thompson in separate parcels.

Immediately after the expiration of the contract the defendants Love and Thompson began negotiations with Madden to purchase the particular property, first offering $5,000, and upon a later offer of $5,350 Madden agreed to accept the same, provided that the Geo. R. Shane Company would be satisfied with reference to any claim for commission, offering to pay the sum of $50 of the amount they would have to pay said agents as a settlement of said claim. This particular trade was not made.

Handy, the other defendant, who was a connection of Thompson's and a blood relation of Love's, was thereafter cognizant of the negotiations. Tuck, who finally negotiated for and purchased the property, procured a deed from Madden, in his name, for the consideration of $5,250, and it was done at the instigation of Handy. The testimony is conclusive that Tuck was a "straw" man, and amply sufficient to sustain that Love and Thompson were cognizant of the purpose before the deal was closed. The jury found that this was done for the purpose of defeating the Shane Company out of their commission.

Mrs. Shane, one of the company, testified that Thompson inquired of her before Tuck bought the property, if the property were sold to some other person and then resold to him, would she claim a commission, and that she informed him if it were not a "put-up job" she would not make such claim. She also testified that thereafter she informed Madden that they intended to buy the property with the aid of a "straw" man, and, if so, she would sue them all for fraud and collusion. Madden denied this, but the jury found against him.

The Shane Company alleged elements of conspiracy and fraud upon the above facts against Handy, Love, Thompson, and Madden as a scheme to defraud them out of the commission, and the jury responded favorably to such allegations upon every issue. It was also alleged:

"That, if they are mistaken with reference to their legal right to recover damages under the foregoing plea, then they say that the defendants Thompson and Love purchased the said property from the said J. W. Madden for the sum of $5,300, and that under the terms of said contract plaintiffs are entitled to their commission of 5 per cent.," etc.; that prior to the sale to Thompson and Love, and prior to the deed from Madden to Tuck, the defendant Madden was fully informed and advised that a "straw" man was to be used for that purpose.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] The ordinary question, often controverted, whether the real estate agent procured a purchaser and was the efficient cause of the sale, is not in this case. We think the testimony is amply sufficient to sustain the proposition that the Shane Company, during the life of the contract, sufficiently called the attention of Love and Thompson to the property, and interested them therein, to such an extent as to find that, applicable to that phase of said contract, the Shane Company complied therewith. Madden denied any notice or knowledge that Tuck, who was instigated by Handy to purchase the property, was in reality purchasing said property for the benefit of Love and Thompson. Tuck also claimed that he was acting under the instructions of Handy and was purchasing it, so far as his knowledge extended, for the latter's benefit. The jury having found that Madden before this transaction occurred was warned and notified that a "straw" man would be used for the purpose of beating the commission, we think, under the conditions, that Madden owed the duty to inquire of Tuck as to his attitude to the purchase, and evidently, if Tuck had answered the truth, it would have led to the discovery that Handy, Thompson, and Love were participants in the transaction.

[2-4] If the allegations in this case were leveled against Madden solely, upon an action ex contractu, averring a compliance by the Shane County with the contract, in order to show a fulfillment on their part, the same facts, exhibiting the circumlocution and the method of purchase by Tuck at the instigation of Handy, with the knowledge of Love and Thompson, and the warning to Madden that a "straw" man was contemplated, would be admissible as were admitted in this case for the purpose of proving Madden's alleged liability upon the contract.

Assuming that Tuck did not know who were the real beneficiaries of his purchase, stripped, however, of the subterfuge as conceived by Handy, approved by Love and Thompson, and found by the jury, we have, of course, Love and Thompson, as stated, the real purchasers of the property under the contract. The only escape for Madden upon the facts is that he is innocent; that is, having reduced the price of the property, and not knowing that the purchase was intended for Love and Thompson, he was consequently selling to an independent purchaser in conveying to Tuck, and was therefore under no obligations to pay a commission. It is true that the allegation is, in part, in building to the contractual cause of action against Madden that he knew of the conspiracy; but appellees further specially alleged that he was warned that such a conspiracy would be attempted, and advised that such a "straw" man would be used for that purpose. Hence, if the case as to Madden had been tried against him upon straight allegations of his liability, without a joinder, and if the same character of testimony as to the relations of these parties would have been admissible as in the action as tried, because this action is joined with one of tort, we can see no real injury whatever so far as Madden is concerned. Upon the allegations as made we can see no cause of action against Handy, Love, and Thompson. It is held, where but one cause of action is alleged against one of the defendants, and no cause of action is alleged against the remaining defendants, there is in reality no misjoinder. Good v. Daland, 121 N. Y. 1, 24 N. E. 15; New York v. Sixth Ave. R. Co., 77 App. Div. 367, 79 N. Y. Supp. 319; Lohmiller v. Indian Ford Water Power Co., 51 Wis. 683, 8 N. W. 601.

[5, 6] The above authorities clearly hold the proposition, but we conceive, of course, that a reasonable exception to such a rule may be that, if a court overrules the exceptions on the ground of misjoinder, and assumes that a cause of action in reality exists against some of the defendants, when none is charged, injury could occur. The allegations are sufficient in this case to charge Madden as upon the contract, when differentiated from the allegations of tort, to permit a recovery against him. Demurrers addressed to the question of misjoinder of parties and causes of action were overruled by the court, and it is vigorously insisted that this is ground for reversal. Ordinarily that proposition is correct, but, on account of the alternative nature of the pleading in this case, the proposition extends further to the question of election. An element entering into the objection against a joinder of different parties and of different causes of action is one involving a complication of issues, confusing to the jury on the merits of the case, as well as operating as a prejudice to the parties in the litigation. The authorities are unanimous that misjoinder of parties or causes of action may be waived. If there is a case where, though not waived, the nature of the testimony is such that there could be no injury, this record is in that condition.

A careful perusal of the record and the nature of the proof as a predicate of the liability ex contractu against Madden convinces us that in the main every fact offered by the appellees in this suit is admissible upon Madden's liability.

[7] Legally we do not believe that the other three defendants, Handy, Love, and Thompson, can be held. It cannot be said that they interfered with a contract. The Shane Company never consummated any deal with Love and Thompson. Of course, under the jury's finding, they surreptitiously purchased this property for the purpose of defeating the commission. When they did purchase it, however, the Shane Company's rights then accrued, and Madden's obligation to pay matured, provided he knew, or should have known, that Love and Thompson were the purchasers. Numerous authorities on the question of interference with another's con-

tract, based upon conditions where one contracting party is prevailed upon to breach the same, or cases where this is an unlawful and malicious interference with another's business, we are inclined to think, do not apply to the peculiar facts of this case. Page on Contracts, vol. 3, §§ 1326 to 1337, inclusive, for a full discussion of the subject.

Until Love and Thompson actually purchased the property, whether they did so openly or surreptitiously, the Shane Company had not earned a cent upon the contract. To say that they destroyed or interfered with that which they in reality created is, of course, illogical. You would have to base the liability upon the reprehensible conduct, because, when you connect it with a legal injury as applied to the damage averred here, you get into the realm of benefit, instead of damage. It may, of course, be said they derived some benefit from the efforts of the real estate agents in purchasing the property called to their attention. So would they have done had they openly purchased, but in receiving those benefits they created the very rights wherein the company claim they were injured.

The cause will be affirmed as to Madden, reversed and rendered as to Handy, Love, and Thompson, with the order that the Shane Company pay one-third and Madden two-thirds of the costs of this appeal.

Affirmed in part and reversed and rendered in part.

### On Motion for Rehearing.

We think counsel probably overlooks successive logical steps in regard to the duty of Madden. He was charged in the petition that a "straw man" would be produced as the ostensible purchaser of the property, and Mrs. Shane testified that she notified Madden that such "straw man" would be used for that purpose. If Madden had inquired of Tuck, presumptively he would have procured information that Handy was behind the negotiations, a party with whom he had been previously dealing, to the end that a sale of said property could be made to Thompson. Handy was a brother-in-law of Thompson, and half-brother of Love, and it is very reasonable to infer that Madden would know that Handy did not want the particular property.

[8] The complaint of the appellant Madden that the cause should be reversed and tried upon a fight between Madden and the appellees, Shane & Co., is unavailable, as the theory propounded was already in this case, suggested by the record, and in reality covered by the findings, especially in connection with the presumptive findings of court under article 1985, of Rev. St. 1911, which this court is required to consider on appeal if sustained by the evidence. Thompson testified that he had authorized Handy to purchase the property if he could get it worth the money, and Love swore, in effect, that he participated with Handy (as between them) for the purchase of the property by Tuck. Appellant Madden saw fit to rest his case wholly upon the question of misjoinder.

With an amendment to the judgment of this court, that the appellees, composing the firm of Geo. R. Shane & Co., be required to pay all costs in the trial court produced by making Handy, Love, and Thompson parties to the suit, the motion for rehearing is overruled, and the judgment of the lower court affirmed.