Zimmerman, J.
 

 Assuming that the instant case presented questions of fact for the jury, did counsel for the parties by their behavior waive their right to a determination of such facts by the jury?
 

 The following statement is made in 39 Ohio Jurisprudence, 877 and 878, Section 220:
 

 “Although it may be regarded as settled in Ohio that where each party asks for a directed verdict in his favor and nothing further is said or done by them, a presumption arises that they intend to waive the right to a submission to a jury and consent to a decision by the court on the questions of fact involved as well as the questions of law, that rule does not apply if either party,
 
 in connection
 
 with these motions, makes a
 
 timely request
 
 to go to the jury on questions of fact. In other words, if one of the parties indicates to the court
 
 at the proper time
 
 his desire to avail himself of his right to have the questions of fact submitted to the jury, it is the duty of the trial court to give to such party an opportunity to exercise this right.” (Italics ours.)
 

 Probably the leading cases in Ohio on this question are
 
 First National Bank
 
 v.
 
 Hayes & Sons,
 
 64 Ohio St., 100, 59 N. E., 893;
 
 Perkins
 
 v.
 
 Putnam County Commrs.,
 
 88 Ohio St., 495, 103 N. E., 377;
 
 Nead
 
 v.
 
 Hershman,
 
 103 Ohio St., 12, 132 N. E., 19, 18 A. L. R., 1419;
 
 P., C., C. & St. L. Ry. Co.
 
 v.
 
 Luthy, Admr.,
 
 112 Ohio St., 321, 147 N. E., 336. These cases, in holding that the party whose motion for a directed verdict is denied, or
 
 *138
 
 against whom a verdict is directed, is then privileged to demand a submission of the factual issues in the case to the jury, contemplate, on their facts, a situation where the court acts promptly in disposing of the motions and the jury which has heard the evidence is still in the box or under control of the court and immediately available for further service in the case. The matter of waiver under circumstances resembling those now presented did not arise and was not considered.
 

 Let us examine what transpired in the present case. At the conclusion of all the evidence counsel for plaintiff in error moved for a directed verdict and counsel for defendant in error moved for judgment. Neither motion included a reservation of any kind. Counsel for plaintiff in error then said, “That leaves the case for the Court, I assume.” Counsel for defendant in error remained silent. The language addressed by the court to the jury in excusing them carries an unmistakable note of finality. There was no suggestion that they might be recalled in the case nor was there any admonition as to their, conduct in regard to the case. Still counsel for defendant in error remained silent. Thereupon the case was argued to the court on its merits by both counsel. While, later on, counsel for defendant in error indicated an intention to withdraw his motion and expressed the opinion that the court had no right to discharge the jury, he did nothing effective about it. To preserve the question (if it was not then too. late) he should have withdrawn his motion and demanded an immediate recall of the jury, reserving an exception if the court had declined to accede. He did neither. Indicative of the acquiescence of counsel for defendant in error to the discharge of the. jury was his agreement to submit a memorandum on the law pertaining to the case within a period of several days. Accompanying such memorandum, he filed the double-barreled motion of October 31, 1934, in which he asked
 
 *139
 

 the court
 
 for findings of fact and conclusions of law, and then added that if the court should overrule the motion for judgment on the first and second causes of action in the petition, the right was reserved to submit the case to the jury for determination on the evidence. That reservation came too late and the trial court correctly held against it on the theory of waiver.
 

 "We shall not extend this opinion by commenting on the cases about to be cited. In our estimation they support our conclusion on the phase of the controversy under discussion.
 
 Conkling
 
 v.
 
 Knights & Ladies of Security,
 
 183 Iowa, 665, 166 N. W., 384 (with which compare
 
 Manska
 
 v.
 
 San Benito Land Co.,
 
 191 Iowa, 1284, 184 N. W., 345, 18 A. L. R., 1430, and
 
 Bukowski
 
 v.
 
 Security Ben. Assn., ...
 
 Iowa, ..., 265 N. W., 132);
 
 Bonacorso
 
 v.
 
 Camden Fire Ins. Assn.,
 
 130 Neb., 203, 264 N. W., 442;
 
 Sioux National Bank
 
 v.
 
 Lundberg,
 
 54 S. D., 581, 223 N. W., 826;
 
 Secor
 
 v.
 
 Ardsley Ice Co.
 
 117 N. Y. Supp., 414, 133 App. Div., 136 (Affirmed, 201 N. Y., 603, 95 N. E., 1139);
 
 New York
 
 v.
 
 Thirty-fourth St. Crosstown Ry. Co.,
 
 122 N. Y. Supp., 344, 137 App. Div., 644;
 
 General Tire Co.
 
 v.
 
 Standard Accident Ins. Co.
 
 (C. C. A. 8), 65 F. (2d), 237, 239.
 

 Passing the question as to whether the trial court should have directed a verdict for plaintiff in error on the first cause of action, as a matter of law, we are convinced, as was the Court of Appeals, that there was certainly sufficient evidence to support the trial court’s findings and judgment.
 

 The general rule is that fraud is never presumed but must be proved by the one who asserts it. 19 Ohio Jurisprudence, 507, Section 232.
 

 It may be that a fraud was perpetrated on Mrs. Schmidt by some person or persons in the manner in which the exchange of the properties was manipulated, but placing the finger of guilt on the loan company is fraught with difficulties. There is nothing to show that the company was acquainted with Mrs. Schmidt’s
 
 *140
 
 ignorance of the details of the transaction. There is nothing to show that any of the instruments she signed were misrepresented to her. There is nothing to show that she was denied the opportunity of reading what she signed or that she was denied the privilege of seeking independent advice. The only consequential charge against the company is that its attorney informed Mrs. Schmidt she would not be bound on the obligation, as Mitchell was assuming it, and that is by no means conclusive of fraud. No motive is shown as to why the company should have desired to commit a fraud against Mrs. Schmidt. It paid out its money to the extent of nearly $2100, from which amount Mrs. Schmidt personally benefited in the sum of $1433.73, with a distribution of the balance in accordance with her presumed intention.
 

 It follows that the judgment of the Court of Appeals is reversed and that of the Court of Common Pleas affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Stephenson, Williams, Jones, Matthias and Day, JJ., concur.