ELLEN A. SMITH, Appellant, v. SUPREME LODGE, KNIGHTS
AND LADIES OF GOLDEN PRECEPT.

**Mutual Benefit Insurance:** CONSTRUCTION OF STATUTES. Code, sec-
1  tion 1812, which provides that the health certificate of a med-
ical examiner shall estop the company from denying that the
assured was in a condition of health required at the time of
issuance of the policy, unless the same was the result of the
fraud of the assured, has no application to fraternal benefi-
ciary associations organized under title 9, chapter 9 of the
Code, since section 1825 exempts such associations from the
provisions of law relating to life insurance companies.

**False Statements in Application:** EVIDENCE. In an action on a
2  fraternal beneficiary certificate, the evidence is considered and
held to show that the answers of assured in his application
regarding his condition of health were substantially false, ren-
dering the contract void.

*Appeal from Clinton District Court.*—HON. J. W. BOLLIN-
GER, Judge.

WEDNESDAY, MAY 4, 1904.

ACTION in equity to enforce the payment of the pro-
ceeds of an assessment in favor of plaintiff, as beneficiary
under a certificate of membership taken by her deceased hus-
band, James A. Smith, in the defendant, which is a fraternal

beneficiary association.  Decree for defendant, from which plaintiff appeals.—*Affirmed.*

*D. Armentrout* and *A. L. Pascal* for appellant.

*L. F. Sutton* for appellee.

McCLAIN, J.—The defendant association was organized and conducted under the provision of chapter 9, title 9, of the Code, which relates to fraternal beneficiary societies, or-

1. CONSTRUCTION of statute.

ders, and associations. In that chapter it is provided (Code, section 1825) that "such associations shall be governed by this chapter and shall be exempt from the provisions of the statutes of this state relating to life insurance companies, except as hereinafter provided." As the chapter in question contains no provision similar to that of Code, section 1812, relating to the effect of the certificate of health given to an applicant for insurance by the medical examiner "of any life insurance company or association," that section, which is in chapter 8 of the same title of the Code, has no application. If it should be argued that our holding in *Corson v. Iowa M. F. Ins. Co.,* 115 Iowa, 485, relating to the applicability of the provisions of Code, section 1741, in chapter 4 of title 9, relating to fire insurance companies, to mutual fire insurance associations conducted under the provisions of chapter 5 of the same title, is in point, the answer must be that the conclusion reached in the *Corson Case* that the provisions of the section relating to indorsement on the policy of a copy of the application found in the chapter as to fire insurance companies is applicable to mutual associations was placed on the ground that by its terms the section applies to all policies of fire insurance, and that the associations organized under chapter 5 are excluded from the provisions of chapter 4 only so far as those provisions relate to methods of organization, and that there is no specific language in chapter 5 excluding mutual associations from the scope of the general provisions relating to fire insurance. But, as already indicated, there is express statutory lang-

uage excluding beneficiary associations from the provisions applicable to life insurance companies and associations. There are express provisions in chapter 9 with reference to attaching a copy of the application to the contract of insurance, exemption of proceeds, service of process, and other matters as to which no provisions would have been necessary had it been intended that fraternal benefit societies should be within the scope of the provisions of chapter 8. It is to be noticed also that in chapter 9 there is a provision (section 1839) with reference to physician's certificates, and, if it had been the legislative purpose that the provisions of Code, section 1812, should apply to such certificates, it could not be doubted that those provisions would have been incorporated either in full or by reference. We reach the conclusion, therefore, that this case must be determined without regard to the provisions of Code, section 1812, which would have the effect, if applicable to defendant association, of excluding from our consideration any statements made by James A. Smith in his application for membership, except so far as they tended to prove fraud on the part of the assured.

The defendant association, in its answer, relied upon false statements made by James A. Smith in his application for membership and in his answers given to defendant's medical examiner in connection with such application, with the specific agreement and warranty by the applicant that such statements and answers were true, and any untruthful statement should render the certificate null and void; and the sole question for us to determine is whether the trial judge rightly held that the evidence established the substantial falsity of the statements and answers, the truth of which was thus warranted; for, if such statements and answers were not true, then the contract was void under the general principles applicable to warranties in contracts of life insurance, about which there is no controversy in this case, regardless of whether the applicant was guilty of intentional fraud. Perhaps false answers of the applicant misleading the medical

examiner would constitute fraud so as to avoid the contract, even if the provisions of Code, section 1812, were applicable; but, for the reason above suggested, we need not look into the evidence with a view of discovering whether the statements were fraudulent, as the decree of the lower court will be sustained if we find such statements to have been substantially untrue.

In the application and medical examination James A. Smith stated that at the time of the application, in April, 1900, he was in good health, and had not consulted or been treated by a physician since 1898, at which time he had been treated for influenza, or la grippe, by "Drs. Waggoner," from which disease he had fully recovered. He also stated that he had not, within the past year, used patent or other medicine of any kind for any complaint. In answer to the question, "Have you been subject to or had any of the following diseases in the past or present? Answer Yes or No to each," he answered "No" in each case with reference to difficulty in breathing, disease of heart, disease of stomach, palpitation of heart, and shortness of breath. It appears without controversy that in 1898 James. A. Smith was afflicted with la grippe and treated by the firm of physicians referred to by him as "Drs. Waggoner," and there is no substantial evidence that he knowingly made a false statement in saying in his application that he had recovered from such disease; but it does appear that he died in 1901 from heart disease, and that heart disease is not an unusual result of influenza or la grippe, although the resulting heart disease may not always be easily detected. The suggestion here made as to a possible connection between the heart disease of which assured died and the attack of la grippe to which he refers in his application is made solely for the purpose of indicating the vital importance of the statements of the assured in enabling defendant's medical examiner to determine whether or not the applicant should be received as a beneficiary member in the defendant association. It appears in the evidence that within four months after as-

2. **FALSE statements in application: evidence.**

sured applied to the defendant association for membership he stated to a friend, in substance, that he had a pain in his side in the region of the heart, and, while he did not know whether it was heart disease, he feared "it may get away with me yet." This fact is entitled to no consideration except as giving some support to the contention of defendant that the assured had been in continuous bad health, as the result of la grippe, prior to the time of his application for membership.

But now, coming to the question whether any substantial falsity in the statements made by the assured at the time of his application for membership has been shown, we find the following facts established in the testimony of Dr. M. R. Waggoner, Jr., one of the firm of physicians designated in the application as "Drs. Waggoner," who were consulted by him in connection with his ill health in 1898. This witness was called for the plaintiff, but on cross-examination he testified that, while he had not discovered that assured was suffering from heart disease until a short time prior to his death in 1901, he nevertheless had suspected the existence of such disease during the latter part of the year 1899, when he was consulted by the assured, complaining of shortness of breath and difficulty in breathing and a burning pain in the pit of the stomach; and the witness testifies that at that time—which was nearly a year after assured had apparently recovered from la grippe—the assured requested treatment for these difficulties, and that at his request the witness prescribed for them in accordance with the homeopathic method of treatment. The witness further testifies that at this time, while he discovered no heart trouble, he told the assured that he was suspicious of that difficulty. It clearly appears from the evidence of this witness that the troubles of which the assured complained, and for which he accepted treatment, were not so temporary and insignificant in character that he was justified in ignoring and denying them when he made application for membership in defendant association in April following.

We reach the conclusion that the misstatements of the assured in connection with his application were such as to render the contract void under its terms, and that the decree of the lower court in favor of the defendant should be AFFIRMED.