KATE CONKLING, Appellee, v. KNIGHTS & LADIES OF SECURITY, Appellants.

INSURANCE: Waiver of Automatic Forfeiture. An insurer who
1    fails to avail himself of an automatic forfeiture of all rights under a policy when it is to his interest not to do so may not avail himself of such forfeiture when it is to his interest to

do so.   More concretely, an insurer who, while the insured is alive, continually fails to insist upon the payment of assessments, etc., within the time specifically stipulated by the policy, and thereby causes the insured, as a reasonably prudent person, to believe that such payments may be made within a reasonable time after such stipulated time, thereby waives the right, after the insured is dead, to insist that the policy was automatically forfeited by the failure of the insured to make his last payment within the time stipulated in the policy.

**JURY: Waiver.**   The right to have disputed questions of fact determined by the jury is waived by the conduct of counsel in permitting the court to proceed, without objection, on its clearly expressed understanding that all matters are withdrawn from the jury and are to be disposed of by the court.

*Appeal from Polk District Court.*—CHAS. A. DUDLEY, Judge.

FEBRUARY 15, 1918.

REHEARING DENIED MAY 17, 1918.

ACTION to recover on a benefit certificate issued to plaintiff's husband, in which she was named as beneficiary. The opinion states the facts.   Judgment for the plaintiff in the court below.   Defendant appeals.—*Affirmed.*

*Jordan & Jordan,* and *Dunshee, Haines & Brody,* for appellants.

*McLaughlin, Shankland & Lappen,* and *Parsons & Mills,* for appellee.

GAYNOR, J.—I.   Plaintiff is the beneficiary named in a certain benefit certificate issued by the Knights & Ladies of Security to her husband, Charles R. Conkling.   The certificate was issued on the 3d day of March, 1905.   Charles R. Conkling died on the 7th day of August, 1914.   This action is brought by the plaintiff, as beneficiary, to recover the amount provided in the certificate to be paid to her on the death of her husband.

1. INSURANCE: waiver of automatic forfeiture.

It appears that all dues had been paid up to the 1st of July, 1914. The society defends on the ground that, at the time of the death of Conkling, all rights under the certificate had been forfeited, because of his failure to pay the July dues within the month of July.

Plaintiff replies that it was the general custom of the defendant to receive dues after the month in which the same became due and payable; that the assured relied on this custom and course of business, and was led to assume and believe that no forfeiture would occur from a failure to pay promptly and within the time specified in the contract; that plaintiff had been delinquent frequently before this time, and defendant had accepted payment, as for the preceding month, at a later date than that required by the contract; that the defendant had adopted a course of business with the plaintiff by which he was permitted to pay his monthly dues several days after the month in which the same became due, and was still treated as a member in good standing in the order; that decedent assumed and believed that the defendant would never require a literal and strict compliance with the contract in this particular; that the defendant, in accepting and receipting for said dues after the month in which the same became due, waived a strict compliance with the contract, and is now estopped from asserting that the contract was forfeited for failure to pay the dues in July for the month of July, as required by the contract; that the dues for July were sent to the defendant and received by the defendant on the 6th day of August, 1914; that the same were not only received, but receipted for.

The real question, then, for us to determine is whether or not, by a course of conduct such as this record disclosed, defendant waived a strict compliance with the terms of the contract, to which reference is hereinafter made, and is now estopped to assert that the contract was forfeited by the

failure to pay the July, 1914, dues during the month of July, as required by the contract.

The defendant is a mutual benefit association. The by-laws upon which defendant relies are as follows:

"Section 112. *Members Suspended by Their Own Act.* All assessments for every month shall become due and payable on the first day of the month. The certificate of each member who has not paid such assessment or assessments and dues on or before the last day of the month shall, by the fact of such nonpayment, stand suspended without notice, and no act on the part of the Council or any officer thereof, or of the National Council, shall be required as essential to such suspension, and all rights under said certificate shall be forfeited. No right under such certificate shall be restored until it has been duly reinstated by the member complying with the laws of the order, with reference to reinstatement.

"Section 113. *How Reinstated.* Each member who has been suspended for nonpayment of dues or nonpayment of an assessment or assessments shall only be reinstated in accordance with the constitution and laws of the order.

"Section 114. *How a Member may be Reinstated Within Sixty Days.* Any beneficiary member suspended by reason of nonpayment of an assessment or assessments, or dues, may, within sixty days from the date of such suspension, be reinstated upon the following conditions, and none other, viz.: If not engaged in any of the prohibited occupations mentioned in Section 107 of these laws, he may be reinstated by payment, within sixty days from the date of suspension, of all arrearages of every kind, including assessments and dues, for which he would have been liable had he remained in good standing; provided, however, that he be in good health at the time of making payment to the Financier, with a view to reinstatement. The payment of any such assessments and dues for reinstatement shall be a war-

ranty by such member that he is in good health at the time
of such payment.    Provided, further, that the receipt and
retention of such assessments and dues, in case the suspen-
ded member is not in good health, or is engaged in a prohib-
ited occupation, shall not have the effect of reinstating said
member or of entitling him or his beneficiaries to any rights
under his benefit certificates.

"Section 120.    *National Council not Bound by an Ille-
gal Receipt.*    The National Council shall not be bound by
the acceptance of arrears of assessments and dues from sus-
pended members who are not entitled to reinstatement in
accordance with the laws of the order.    The receiving of
such arrears and receipting therefor by any officer of a sub-
ordinate council, the National Secretary, or by any other
person, or the payment by or on behalf of any suspended
member of arrears of assessment and dues with a view of
reinstatement, except as provided for in the laws of the
order, shall not be binding on the National Council.    The
failure of any financier to report to the National Council as
suspended any suspended member of his Council shall not
operate in any case as a waiver of the forfeiture occurring
on account of the suspension.    The retention by the Finan-
cier or by the order of assessments and dues paid by mem-
bers or for them with a view to reinstatement other than
is provided in the laws of the order, either before or after
death, shall not constitute a waiver of any provisions of
these laws, until a demand has been duly made for their
return by such member or his beneficiary or legal represen-
tative.

"Section 120.    (a)    *National Council not Bound by
Knowledge of or Notice to Officers or Members of Local
Councils.*    No officer of this society nor any local council offi-
cer, or member thereof is authorized or permitted to waive
any provisions of the by-laws of this society which relate to
the contract between the member and the society, whether

the same be now in force or hereafter enacted. Neither shall any knowledge or information obtained by, nor notice to any subordinate council or officer or member thereof, or by or to any other person, be held or construed to be the knowledge or notice to the National Council or the officers thereof, until after said information or notice be given in writing to the National Secretary of the order.

"Section 157. *Duties of the Financier.* The Financier shall not knowingly collect or receive assessments and dues from a member who has become suspended for nonpayment of the same, or who has been expelled from the order for any cause, if, at the time of tender, the member is not in good health, or knowingly collect or receive assessments and dues on account of a suspended member who is dead at time payment is tendered. The receipt of assessments and dues contrary to the provisions of this section, or any other laws of the order, shall be unavailing in favor of the suspended or defaulting member, and such Financier shall forfeit his membership in the order for such violation."

The certificate issued to the deceased, on which plaintiff relies, provides that the certificate or contract is and shall be subject to forfeiture for any of the causes of forfeiture which are now prescribed in the laws of the order, or for any other cause or causes of forfeiture which may hereafter be prescribed by an amendment of its by-laws.

It is apparent from these by-laws, which were a part of the contract between the deceased and the defendant company, that a failure to pay an assessment on or before the last day of the month automatically suspends the member, without any act on the part of the defendant, and all rights under the certificate become forfeited. The July, 1914, payment should have been made, under the strict terms of this contract, during the month of July. It was not paid, nor was payment tendered, until the 6th day of August. Con-

sidering this provision of the policy in force, all rights under the certificate became forfeited automatically on the 1st day of August, and the member was suspended. This is a provision of the policy made for the benefit of the society. Upon this provision, the minds of the parties had met. It was binding on the assured. The company had a right to insist on its strict enforcement. No member whose rights had been so forfeited could be reinstated, except by complying with the provisions of Section 114, hereinbefore set out, and this within sixty days from the date of suspension. His reinstatement might be brought about by payment, within sixty days from the date of suspension, of all arrearages, including assessments and dues, for which he would have been liable had he remained in good standing, provided he were in good health at the time of making the payment with a view to reinstatement. Under the provisions of this section, the payment of any such assessments and dues for reinstatement was a warranty by such member that he was in good health at the time of such payment. It appears that the deceased was not in good health at the time this July payment was made, on the 6th day of August; that he had been sick for several days, and died on the 7th. We start with the proposition that these provisions of the by-laws were binding upon the assured and the plaintiff, and, unless waived by the society, stand in the way of any recovery upon the certificate in this suit. The duty to pay strictly within the time provided in By-law No. 112 rests upon the assured. The consequences that follow a failure to pay within the time stipulated are found within that section. A failure to pay within the month works a forfeiture of rights under the certificate, and a suspension of the member. Under a strict enforcement of the contract, the assured thereafter would have no right under the certificate until reinstated, and his reinstatement could only occur upon a payment of the amounts due the society, for

which he would be liable if not suspended, and the further showing that he was in good health at the time he makes the payment. A payment made for reinstatement is a warranty that he is in good health when the payment is tendered. If the payment had been made in July, in accordance with the terms of the contract, it would be wholly immaterial whether the assured was sick or even dead at the time the payment was made. The indemnity is against death occurring while the certificate is in force. If, at the time of the death, the rights of the assured had been forfeited for failure to pay in accordance with the terms of the contract, then sickness or death would be a material matter for consideration; for in no event then could the assured make the proof entitling him to be reinstated.

The question then is: Were the provisions of Section 112 of the by-laws, in so far as it provides, "The certificate of each member who has not paid such assessment or assessments and dues on or before the last day of the month shall, by the fact of such nonpayment, stand suspended without notice," with further provision, "No right under such certificate shall be restored until it has been duly reinstated by the member complying with the laws of the order with reference to reinstatement," operative against the plaintiff?

As we have said before, if this provision was in full force on the 6th day of August, at the time the payment of the July dues was made, then, by virtue of this provision, the member having been suspended automatically by a failure to pay within the month of July, no rights remained under the certificate that could be enforced by his beneficiary after his death; and before death, no right remained in him except the right to be reinstated as provided in Section 114.

This brings us to the one point in this case: Does a failure to comply with Section 112 stand in the way of recovery in this case, under the facts disclosed in this record?

This provision of the contract was made for the benefit of the society, and, being made for the benefit of the society may be waived by the society. The question, then, is: Did it waive this provision of the policy, so that, on the 6th day of August, the assured was not suspended, and his rights were not forfeited under the contract, at the time the payment for July was made to the society and received by the society?

What was the assured's duty in this case? To pay his dues within the month of July. What was the defendant's right? To have the dues paid within the month of July. Assured's duty was contractual. Defendant's right also rested in the contract. Waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of such relinquishment. Defendant's contractual right was to have the premium paid within the limits of the month. The duty of the plaintiff and the right of the defendant were equal. The forfeiture was the consequence only that followed a failure of the assured to perform a contractual duty on which rested the defendant's right to have the duty performed. The right of the defendant to have this duty performed could be waived by the defendant. Was it waived?

The record discloses that, upon the payment of the July, 1914, dues, made on the 6th day of August, 1914, the society issued the following receipt:

"$5.20.          Knights & Ladies of Security, Des Moines Council, No. 616, located at Des Moines, State of Iowa, August 7, 1914.

"Received payment of Charles and Clyde Conkling, Five and 20-100 Dollars payment for the months of July and August."

It appears that Clyde was also a member of this same society, and the receipt was to cover payment for his dues and the dues of the deceased.

Prior to this time, the assured had made payments, and receipts were issued in substantially the above form, days after the date fixed in the contract. Witness the following:

April 15, 1908, for October and November.

May 13, 1908, for April.

July 9, 1908, for June.

September 15, 1908, for August.

October 10, 1908, for September.

November 9, 1908, for October.

December 14, 1908, for November.

January 8, 1909, for December.

February 5, 1909, for January.

March 9, 1909, for February.

May 7, 1909, for April.

June 4, 1909, for May.

July 2, 1909, for June.

August 6, 1909, for July.

September 7, 1909, for August.

November 4, 1909, for October.

December 8, 1909, for November.

December 13, 1909, for December and January.

March 14, 1910, for February and March.

May 12, 1910, for April and May.

June 7, 1910, for June and July.

July 12, 1910, for June and July.

September 14, 1910, for August and September.

November 17, 1910, for October and November.

January 10, 1911, for December, 1910, and January, 1911.

February 28, 1911, for February and March.

July 20, 1911, for June and July.

June 4, 1914, for May and June.

The payment in question was received by the financier of the defendant society on the 6th day of August. Payment was for July and August. These payments were entered on the record of the society on the 7th day of August, 1914, and

receipt issued.   The society first learned of the death of the assured on the afternoon of the 7th day of August, or on the morning of the 8th.   On the discovery of the death of the assured, the money was returned to the parties sending it, and has been tendered back for the use of the society. This payment was not remitted to the National Council. All other payments made by the assured were remitted to the National Council between the 5th and 12th of the month. At no time when any of these payments were made had the society any knowledge of the then physical condition of Conkling, nor does the record disclose that any inquiry was ever made touching his physical condition.   As to delinquent payments, no demand was ever made for a certificate of health, or for any showing as to the then condition of the assured's health.   All delinquent payments prior to this one seem to have been made and received, not as for reinstatement, but as for a payment of dues essential to keep the certificate alive.   Nowhere in the record does it appear that any of these delinquent payments were ever received or accepted for the purpose of reinstatement.   This payment and all other payments seem to have been tendered and accepted as for a payment made within the limits of the right of the assured to make payments and preserve the integrity of his policy:   at least, no question was ever made, so far as this record shows, as to the character of the payment, or for what it was paid and received.   While the contract provided that these payments should be made within the month, to preserve the integrity of the certificate, the society permitted the assured to make payments after the month, and treated his certificate as still continuing; and it must treat this payment the same.   There is no question in this record that any of these payments were made for the purpose of reinstatement, or with the thought that reinstatement was necessary.   They were not accepted as for reinstatement, nor does there appear to have been any thought in the mind of

either of the contracting parties that the payments were not made strictly in compliance with the terms of the contract, though not within the time limit of the contract. The course of dealing on the part of the society with this assured was such as to lead a man of ordinary prudence to believe that it was not insisting upon a strict performance of the contract touching the time of payments; and we must assume the assured to have been a reasonable man, and that he too believed, from this course of conduct, that the defendant was not so insisting. If the society, by its conduct, led the assured, as a reasonable and prudent business man, to believe that he could make payments a few days after the time specified in the contract, and avoid forfeiture or suspension, then the conduct of the defendant was a waiver of the strict performance of the contractual duty, and estops defendant now to say that such failure to perform strictly as the contract required worked a forfeiture under the terms of the contract, and that this payment was not made in time. If, by its conduct, it gave assured to understand, and, as a reasonably prudent man, he had a right to understand, that a payment could be made after the expiration of the month in which it was due, and he could thereby preserve the integrity of the certificate and avoid suspension or forfeiture, and he made this payment relying thereon, it is estopped now to say that a payment made in accordance with the understanding so induced by its conduct and the custom which it had adopted in dealing with the assured, was not a payment in time to preserve the life of the certificate. In all these instances, so far as this record shows, the payments were made after the time limit found in the contract, not for the purpose of reinstatement, but for the purpose of continuing the certificate in force, and were received, not for the purpose of reinstatement, but for the purpose of continuing the policy, with all the rights and benefits.

Justice Field, in *Globe Mut. Life Ins. Co. v. Wolff*, 95 U. S. 326 (24 L. Ed. 387), in construing a policy practically the same as the policy here, said:

"If, therefore, the conduct of the company in its dealings with the assured * * * has been such as to induce a belief that so much of the contract as provides for a forfeiture if the premium be not paid on the day it is due, would not be enforced if payment were made within a reasonable period afterwards, the company ought not, in common justice, to be permitted to allege such forfeiture against one who has acted upon the belief, and subsequently made the payment."

This doctrine is well pronounced in *Hartford L. & A. Ins. Co. v. Unsell*, 144 U. S. 439 (36 L. Ed. 496), in which the court approved an instruction to the effect that:

"Nobody is bound to enter into any contract. It is perfectly voluntary on the part of either side; but, when they once enter in, the terms of the contract, as expressed in the writing, control. The plaintiff comes in, however, and says: 'Conceding that this contract reads in this way, the company by its conduct waived the necessity of a strict compliance. She does not say the company so said to her or her husband, 'We do not insist upon this, we waive this;' but she says that the company so acted, so conducted itself in its dealings with her husband, that he, as a prudent, reasonable man, did believe, and had the right to believe, that payment on the very day specified would not be insisted upon. Of course, we speak by our actions just as much as we do by our words; and, although there may be no spoken word—no written word—declaring a waiver, yet it may be that a man, by his conduct, his course of dealing, justly and fairly leads the other party to believe that he does not care about a strict compliance. * * * It did, when her husband was alive and well, take the dues from him after the time specified, and permit the policy to continue in

force, and that it did so until he had a right, as a reasonable man, to believe, and did in fact believe, that that was to be the rule in the future."

It appears that, in this *Unsell* case, some notice was given the plaintiff in some instances that the money was accepted as for reinstatement, and with this thought in mind, the *nisi prius* court gave the following instruction:

"But the plaintiff says that, beyond these receipts of money after the day specified, there were instances in which money was received without any such notice. Now the question comes up, in respect to that, Was there such a continuance of business—was the whole course of business, from the commencement to the close, such—that from this and that, and from all the receipts and all the transactions, he had a right to believe and did believe that the question of health, even, would not be considered, and that it would be willing to take his money shortly after it had become due, without inquiry as to his health? If so, that makes a waiver. If the company, by its conduct, led him, as a reasonable and prudent business man, to believe that he could make payments a few days after, sick or well, it cannot turn around now and say, 'You did not pay at the time.' I cannot say to you, as a matter of law, that one receipt, after the time specified, would make a waiver, or that fifty would. It is not in the numbers. The question is for you to consider and determine from all of them, and from the whole course of business, whether, as a prudent business man, he had a right to believe that it was immaterial whether he paid on the day or a few days later. If the course of conduct was such that he had a right to believe that he could pay only in good health, then there was no waiver applicable to the case at bar. It must have been such a course of conduct as would lead a reasonably prudent man to believe that the company was willing to take payment, sick or well."

In the case at bar, there is no evidence that the company ever notified the assured that it received as a reinstatement any of the delinquent payments hereinbefore referred to, or advised him that it would be held as for reinstatement upon making proofs of health. The receipt given in each instance was substantially the same as the receipt given at the time of this last payment on August 6th; and the receipt itself shows, and, therefore, all receipts for delinquent payments show, that they were received, not for reinstatement, but as for a payment of dues in compliance with the requirements of the contract. Forfeitures are not favored in law. As said by the Supreme Court in the *Unsell* case:

"That courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or any agreement to do so on which the party has relied and acted. * * * Any agreement, declaration, or course of action on the part of an insurance company which leads a party insured honestly to believe that, by conforming thereto, a forfeiture of his policy will not be incurred, followed by due conformity in his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract."

In *Cotton States Life Ins. Co. v. Lester*, 62 Ga. 247, the policy provided that the premiums were to be paid quarterly on the 3d of August, November, February, and May of each year; and, in the event of a failure to so pay, then the policy was to be null and void. The policy was issued in 1871, and the insured died in 1875. No payment was made on the day specified. The last premium, which should have been paid on May 3d, was not paid until the 17th of May. The receipt issued for this payment contained the words "And policy holder in good health," after the word "countersigned" in the following clause thereof:

"But this certificate shall not be binding on the company until the amount of the premium is paid and the receipt countersigned."

The court said:

"Substantially but one question is made, and that is, Does the fact that the continued habit of the company in receiving the premiums on days different from those specified in the policy, amount to a waiver of punctual payment on the part of the company, and was Mrs. Tufts' [the insured's] payment on the 17th day of May, therefore, as binding on the company as if made on the 3d day of May, the day the policy required it to be made? If it had been made on that day, of course, health at that time could not vitiate. Was she authorized by the course of dealing between the company and herself to consider that the time was not regarded by them as of the essence of the contract, and that payment on the 17th was as good as if made on the 3d? If so, it did not matter whether she was sick or well on that day, because it would not have made any difference in her right to pay on the 3d whether she was sick or well. Death, and bad health which causes death, are the very things against which the company insures, and it would not do to allow them to refuse payment of the premiums or to predicate a defense on change of health. The nonexaction of punctual payment of these premiums had become the habit of the company, so far as this woman was concerned. * * * For the first two years, she paid four times a year, before due. For the last two, she paid four times a year after due, and not one word escaped the company of warning to her of any sort. * * * Upon principle, we think that, though time be of the essence of the contract of insurance, and punctual payments essential to their prosperity, yet they may, by their conduct, waive it, and thus produce such an impression upon those dealing with them that it would be unjust to permit them to invoke the prin-

ciple to their aid; and that, in such a case as this, when the day seems never to have been insisted upon, but payment in a reasonable time theretofore or thereafter had been always allowed, that the company should be held to be estopped from engrafting on this last receipt a condition never exacted before."

See, also, *Aetna Life Ins. Co. v. Fallow*, 110 Tenn. 720 (77 S. W. 937).

In *De Frece v. National Life Ins. Co.*, 136 N. Y. 144 (32 N. E. 556), in discussing a question similar to the one here, the court said:

"It was entirely competent for the parties to modify the terms of the original contract with respect to the time of payment and the effect of a failure to make punctual payment, and the evidence is sufficient to support a finding that the defendant agreed, subsequently to the execution of the contract, to accept payment of the premiums quarterly, or within a reasonable time thereafter, and that the policy should continue in force until such payments were made, providing they were not unreasonably deferred." 

It is apparent that an implied agreement not to insist upon forfeiture for a failure to pay within the time, where the agreement can be fairly implied from the conduct of the parties, is just as effectual as though it were expressly made and entered into by the parties.

In *Morgan v. Northwestern Nat. Life Ins. Co.*, 42 Wash. 10 (7 Am. & Eng. Ann. Cases 382), it appears the *nisi prius* court gave this instruction:

"Now, if you find from the evidence that she [the insured] made all of the payments of these monthly installments of premium towards the latter part of the month, after the making of the new arrangement, and that the company received them without objection and without calling her attention to the fact that they were payable sooner, and if you further find that, by such course of dealing, she, as a

prudent person, was led to believe and did believe that she was making these payments according to the terms of this new arrangement, by making them at any time during the month,—if you find that she so understood the new arrangement, and that the custom and conduct of the company in receiving these payments without objection were calculated to lead an ordinarily prudent person to so understand and believe, and that she was thereby induced to rest in that belief and understanding at all times previous to her death, and that, in consequence of such conduct on the part of the company, she had good reason to believe, and did believe, up to that time, that she had paid all these installments as they became due, and that the last one was then overdue,—if you find all these facts from the evidence in the case, then I instruct you that the company is estopped and has waived its right to insist upon the forfeiture of this policy by reason of the nonpayment of the last installment of premium, and in that case your verdict should be for the plaintiff."

The court, on appeal, said:

"This instruction seems to us to be so fully and completely in accord, not only with the established principles of law, but with the universally accepted principles of good morals, that it is difficult to make an argument in its defense."

This instruction was given and approved by that court, notwithstanding the fact that the certificate provided that the nonpayment of premium when due should forfeit the premiums paid on the policy and terminate the liability of the company thereunder, and notwithstanding it provided further that "the acceptance of any premium after it is due is to be considered an act of courtesy only, and shall not be deemed as establishing a custom or as waiving or disturbing any of the conditions as to payment of premiums thereafter due." The court further said:

"So it will be seen that this woman, under the strict construction of the contract relied upon by the appellant, during all of these nine months in which they were receiving and appropriating ten dollars a month from her, was actually insured but a very few days. For, during the months of January, February, June, July and August, she was not insured at all, or at the most but for a few hours in each month, and during the other months, as will be seen, her time of insurance amounted to a very few days. It would be inequitable to allow the company to receive money under such circumstances and disclaim any responsibility to the insured."

See *Appleton v. Phoenix Mut. Life Ins. Co.*, 59 N. H. 541; *Goedecke v. Metropolitan Life Ins. Co.*, 30 Mo. App. 601; *Thompson v. St. Louis Mut. Life Ins. Co.*, 52 Mo. 469; *Rutherford v. Prudential Ins. Co.*, 34 Ind. App. 531 (73 N. E. 202). In this case it is said:

"It is abundantly settled that an insurance company will be estopped to insist upon forfeiture if, by any agreement, either expressed or implied, by the course of its conduct, it leads the insured honestly to believe that the premiums or assessments will be received after the appointed day."

*Hanley v. Life Assn. of America*, 69 Mo. 380; *Suess v. Imperial Life Ins. Co.*, 86 Mo. App. 10; *Garber v. Globe Mut. Life Ins. Co.*, 4 Ins. Law Journal 307; *Mayer v. Mutual Life Ins. Co.*, 38 Iowa 304; *Bricker v. Great Western Accident Assn.*, 161 Iowa 61. In the last-named case it is said:

"Conceding that, by the terms of the contract of insurance, an obligation rested on the plaintiff to pay his installments promptly and strictly on the day fixed by the contract, conceding that all rights under the contract may be denied by the company for a failure to so do, conceding further that the plaintiff failed to perform the conditions of

the contract as to payment, and that without further notice
the company would be justified in resisting any claim made
by the plaintiff for benefits under the contract, by reason
of such breach, yet the right of the company to so insist
may be waived by expressed words of waiver, or by such
a course of conduct in respect to the matter of payment as
led the plaintiff, as a reasonably prudent and cautious man,
to think that he could make the payments after the date
fixed, as well as on the date fixed. The question here is
whether a prudent man had a right to believe that, so far
as the company was concerned, it was immaterial to it
whether he paid on the day upon which the installments
became due or later, providing he paid it within a reason-
able time. The question is, Was there such a course of
conduct in the business dealings between the plaintiff and the
defendant, in respect to this certificate and the time of pay-
ment, as justified the plaintiff in the belief that the com-
pany was willing to take the payments at a date later, and
would not forfeit the contract for a failure to pay on the
date fixed; or, in other words, had the plaintiff a right to
believe, from the course of conduct between the parties, that
the defendant would not claim a forfeiture of the contract
or right under the contract, because of a failure to pay
strictly and upon the terms of the contract? There was
evidence introduced on the part of the plaintiff tending to
show that, on several occasions, he had been permitted by
the company to pay his installments on a date later than
that fixed by the contract; that the same was accepted by
the company without question or objection. It appears fur-
ther, from the evidence of the plaintiff, that this particular
assessment in question was not paid on the first day of May.
*   *   *   It is contended, however, by appellee that, under
the terms of the policy, the receipt of payment after the
time fixed in the certificate for payment did not waive any
of the provisions of the policy, for the policy itself so de-

clared; that the statement on the back of the receipt issued was sufficient to notify the certificate holder that the defendant did not, by accepting the payment, intend to waive the provisions of the policy made in its favor.    The policy provides that the acceptance of past dues or delinquent calls is optional with the association, and shall not be a waiver of the forfeiture of the policy, but shall be construed, and have the same effect, as if a new application, the same as the last one, were made, and a new policy issued as of the the date of the payment.    *    *    *    In all these cases, it appears that, no matter when the payment was made, it was accepted by the company as a payment for indemnity from the first day of the month, or from the date on which the payment should have been made by the assured.    Instead of treating the payments as made under a new policy, issued on the date of the payment, upon which the right of indemnity alone could be predicated, defendant in every case receipted for the payment as made upon the old policy, and received it as a payment made, not only for the time to come, but for the past."

We think, therefore, the court was justified in holding that the previous dealing between these parties, touching the time of payment of dues, was of such a character (supposing the assured to be a man of reasonable prudence and caution) as to lead him to believe that the company was not insisting upon a strict performance of the contract, and that it was willing to receive payments at any time after the time fixed in the contract, if made within a reasonable time, and that payments so made held the contract in force; that defendant's previous conduct in accepting payments made after the time fixed in the contract was a waiver of its right thereafter to insist that the contract was forfeited by the failure to make payment strictly and in accordance with the terms of the contract; that it is now estopped to say that this payment was not made in time to keep the con-

tract alive. This being true, the question of reinstatement, under the other provisions of the contract, is not involved; for the payment made within the time theretofore recognized as sufficient to keep the policy alive was sufficient to avoid a forfeiture or suspension, and, therefore, there was no occasion for reinstatement, and the court rightly so held.

II. It is contended, however, that the question as to the assured's reliance upon the conduct of defendant as an excuse, and as to whether or not, as a reasonable man, he had a right to rely upon the conduct of the business in deferring the payment until after the time fixed in the contract, was a question for the jury, and should have been submitted to the jury for its determination.

2. JURY:
   waiver.

This question is raised only in what is denominated "Errors relied upon." It is not referred to in the brief points or in the argument, except to say that "we believe the court should not have directed a verdict for the plaintiff." However, the record discloses that, at the conclusion of the testimony, the defendant made a motion for a directed verdict, setting out its grounds; that, thereupon, the plaintiff filed a motion asking that the jury be directed to 'urn a verdict for the plaintiff. When these motions presented, and before ruled on, the court said:

'ere are two motions. Now, gentlemen, of course dispose of this case." Counsel for the plaintiff ⱽes, that waives the jury." The Court: "That ⱽ."

as made to this inquiry by the defendant.
' ᵕ was fully argued to the court in the
ᵕd the court then instructed the jury
ᵕe plaintiff. No exceptions to any
·gs were taken at the time by
were had to the court in the
that this, in its effect, was

to waive a determination of any fact by the jury, and an agreement to submit all the questions to the court for its determination. We think this question is ruled by what is said by this court in *Murray v. Brotherhood of American Yeomen,* 180 Iowa 626; that its effect was to waive a jury upon all controverted questions, and to take the judgment of the court upon the same. See, also, *Gray v. Central Minnesota Immigration Co.,* 127 Iowa 560.

Upon the whole record, we find no reversible error, and the cause is—*Affirmed.*

LADD, EVANS, and STEVENS, JJ., concur.