MARY BUKOWSKI, Appellant, v. SECURITY BENEFIT ASSOCIATION of Topeka, Kansas, Appellee.

No. 42896.

JUNE 21, 1935.

OPINION ON REHEARING FEBRUARY 13, 1936.

REHEARING DENIED JUNE 19, 1936.

W. W. Rankin and E. K. Bekman, for appellant.

McNett, Kuhns & Brown, for appellee.

PARSONS, J.—This case arose over a claimed certificate of membership in Security Benefit Association of Topeka, Kansas, of Hans Maryan Bukowski; the certificate being in the sum of $2,000, of which the plaintiff herein was beneficiary. At the close of the testimony, a motion for a directed verdict was made by the plaintiff, and a like motion was made by the defendant. The court sustained the defendant's motion and entered judgment for defendant. The opinion in this court reversing the lower court is reported in 261 N. W. at page 783, and a rehearing was asked by the defendant appellee, and allowed by the court.

The record in the case is in a confused state; the pleadings are voluminous, covering nearly forty pages scattered throughout the abstract, with about two pages of the answer, setting out an important part of the defense, paragraph 3 thereof, being left out of the abstract. This paragraph alleged that it was a fraternal beneficiary association, duly incorporated and organized and existing under the laws of the state of Kansas, and that it was organized, maintained, and carried on solely for the mutual benefit of its members and their beneficiaries, and not for profit, and that it maintains a lodge system with ritualistic form of work, and maintains a representative form of government; that it has a constitution and by-laws, and a full, complete, and adequate scheme of government contemplated by, and wholly within, the requirements of the law governing and regulating fraternal beneficiary associations. It was stated that the certificate was issued about January 30, 1931, which must be a mistake, for during the trial it was stipulated in the record as a fact that the defendant mailed from its home office the benefit certificate with a photostatic copy of the application thereto attached, and that it was received by the local financier of the lo-

cal lodge at Ottumwa on or about April 28, 1931; and that it was received by means of the United States mail in an open envelope bearing the Ottumwa, Iowa, postmark, by Hans Maryan Bukowski, and thereafter retained by him to the time of his death; and that the original of Exhibit 1, being the application attached to the defendant's answer, was not signed in the handwriting of Hans Maryan Bukowski; and that the allegations contained in paragraph 3 of defendant's answer are true and correct; and that Exhibit 2 attached to the defendant's answer is a correct copy of the constitution and by-laws of the association in force at all times involved in this action.

The constitution and by-laws of the association provided, among other things, that, if the applicant was accepted as a member, the application should be a part of the beneficiary's certificate, and the applicant would be bound and his membership contract governed in all respects by the constitution and laws of the Security Benefit Association, or as the same might be hereafter amended or enacted, without reservation or exception as to the character or nature of such future enactments or amendments. It further provided: -"I agree to and do waive, both for myself and my beneficiary, all legal objections to allowing any physician, surgeon or practitioner of any school consulted by me at any time to testify in any matter involving The Security Benefit Association or my contract of beneficial membership with it." And it further provided: "As a further consideration for the acceptance of this application and the issuance of a beneficiary certificate to me I warrant that I am now in sound physical and mental condition of health." Upon the delivery of the certificate of Bukowski it was indorsed as follows: "This certificate delivered to me this 28th day of April, 1931, and accepted subject to all provisions and conditions set forth in certificate and the constitution and laws of the Security Benefit Association." And it purported to bear the signature of Hans Maryan Bukowski.

In section 88 of the by-laws it was provided as follows:

"Sec. 88. No benefits will be paid on any Beneficiary Certificate to any member or his beneficiary or beneficiaries on account of the disability or death of any member who shall have obtained admission or reinstatement into the Association by false or untrue answers, or concealment, or evasion of facts, in

his application relating either to physical or mental condition, age, personal or family history, diseases, consultation with, or treatment by physician, or as to any other fact or matter upon which information is sought, or shall conceal any of his personal habits, conditions or environments, which are in violation of the Constitution or Laws of the Association, and all payments made upon any such certificate so obtained shall be forfeited to the Association.''

Said application contained this clause: ''As a further condition for the acceptance of this application and the issuance of a beneficiary certificate to me I warrant that I am now in sound physical and mental condition of health.'' And in section 98 of the by-laws it was provided that the certificate shall be void and of no effect if the member is not in good health at the time the certificate is issued to him. And in said application there was an interrogatory: ''Have you been under the care of or consulted any physician, surgeon, or practitioner of any school concerning yourself within the past five years?'' The answer to which was ''No.'' A further question was set out in the application: ''Have you ever been an inmate of any asylum, sanitarium or hospital?'' and the answer was ''No.'' And it was further provided in the by-laws in regard to reinstatement of members for being in arrears for dues: ''The payment of any such assessment and dues for reinstatement shall be a warranty by such member that he is in good health at the time of such payment,'' and provided further that the receipt and retention of such assessment and dues, in case the suspended member is not in good health, shall not have the effect of reinstating the member or of entitling him or his beneficiaries to any rights under his benefit certificate, and the only liability of the association shall be the return of the assessments and dues so paid with a view to obtaining reinstatement.

It further appeared from the record that the assessment became due and payable on the said benefit certificate for the month of September, 1931, and the said payment was due on the first day of the month, but no payment was received, and thereafter said member, having been more than 60 days in suspension, made application for reinstatement, purporting to bear the signature of Hans Maryan Bukowski and dated the 11th day of December, 1931, which was received by the defendant associa-

tion, together with the payment of the assessments due on said certificate for the months of September, October, November, and December, 1931; and that a true and correct photostatic copy of said application for reinstatement purporting to be signed by the said member was attached, marked Exhibit 3, which it was stipulated in the record was given to the insured.

Bukowski, being in arrears on his dues, or assessments, made application dated December 11, 1931, to the defendant for reinstatement, and therein stated, after mentioning the certificate: ''I am applying for reinstatement of said Certificate and for this purpose do warrant that I am now in sound physical and mental condition and a fit subject for life insurance. I further declare and agree that all warranties, answers made to questions, and statements made in my application for membership in the Association shall be made a part of this Application for reinstatement.'' He was reinstated upon this after it was sent to the office of the defendant. This was in December, 1931. The petition sets forth, and the facts are shown, that Bukowski died on the first day of January, 1932, which would be slightly over twenty days from the time his application for reinstatement is dated. The evidence in the case shows that Bukowski had been for some time suffering from a disease; that he had frequently consulted physicians; that he had been an inmate of a hospital, and that he died as a result of disease he was carrying; and not only could the disease have been discovered at the time of the application for reinstatement, but it could have been found to exist at the time of his original application for insurance.

■■■ At the close of all the evidence, the defendant made a motion for a directed verdict, and the plaintiff made a motion for directed verdict, each motion being dictated into the record; and following this it was stipulated and agreed between the parties that, the said cause being submitted, the court could render a decision of said case either during term time or vacation; and that both motions were argued to the court and taken under advisement by the court for consideration and decision. Subsequent to these proceedings, and on the 31st of May, 1934, the court made an entry overruling the plaintiff's motion for a directed verdict, and sustained the motion of defendant for a directed verdict, and rendered judgment against plaintiff for costs, to all of which rulings, of course, the plaintiff excepted.

This record is such that it submitted the whole matter to

the court for his decision, and that the decision and finding of the court in that matter stands as a verdict of the jury, if there was any evidence whatever to sustain it. It is not the general rule in Iowa that the making of a motion for a directed verdict by each of the parties litigant gives to the court this power. It is only where there is a waiver of the right of a party to have the verdict of the jury on the facts that the court has that power in this state. The rule in the federal courts is the other way, and in many courts, that is to say, when such motions are made the very making of both motions, with nothing else, leaves it to the court to make a finding, and the court's finding is conclusive. We have not any rule of that kind in this state, but we do have the rule in this state that, where the acts of the parties amount to a waiver of the right to have a verdict of the jury, then the court is clothed with the power to direct a verdict on the facts, and render a judgment accordingly. The rule in Iowa is illustrated by the following cases: First National Bank v. Crabtree, 86 Iowa 731, 52 N. W. 559; Murray v. Brotherhood of American Yeomen, 180 Iowa 626, 163 N. W. 421; Gray v. Central Minn. Im. Co., 127 Iowa 560, 103 N. W. 792; Wells v. Telegraph Co., 144 Iowa 605, 123 N. W. 371, 24 L. R. A. (N. S.) 1045, 138 Am. St. Rep. 317, and Smith v. Lamb, 220 Iowa 835, 263 N. W. 311.

One case not cited is Conkling v. Knights and Ladies of Security, 183 Iowa 665, 686, 166 N. W. 384, 390. This was an action on an insurance certificate. At the close of all the evidence the defendant made a motion for a directed verdict, and a like motion was made by plaintiff, whereupon the court remarked: "There are two motions. Now, gentlemen, of course that will dispose of this case." Counsel for plaintiff answered: "Yes, that waives the jury." The court: "That waives the jury." No answer was made to this inquiry by the defendant. Thereupon the case was fully argued to the court in the absence of the jury, and the court then instructed the jury to return a verdict for the plaintiff. This court then said of this language:

"We think that this, in effect, was to waive a determination of any fact by the jury and an agreement to submit all the questions to the court for its determination."

So on this branch of the argument we fail to find that the rule in this state is that, where each party moves for a directed verdict, a verdict may be directed; the mere motion by each party

is not of itself a waiver of a jury without more There must be some action or indication that this is a submission of the case where the court will be entitled to treat the matter as having authority to determine the questions of fact and law.

Smith v. Lamb, cited merely decides that the court's decision in a jury-waived case has weight of a jury's verdict on fact situation.

The stipulation in this case between the parties, hereinbefore recited, that the "court could render a decision of said case during term time or vacation", in our opinion was a waiver of the right to have a jury consider it.

■■■ This being true, then the only question is on this branch of the case, Did the court have the right to enter judgment against the plaintiff? We think it did, by reason of the facts recited herein, and that the finding of the court on the facts is conclusive. Take this record as a whole: Either Bukowski was a member of the defendant association or he was not. If he were a member of the association, he must have been made so on an application made either by himself or by somebody with his consent, on his behalf. That is the rule that is laid down in the rules and articles of incorporation of the association; by which they are bound. If so, then there was a waiver of the right to object to physicians' testimony by which the sickness and nature of the disease which caused the death of Bukowski could be ascertained. The testimony was competent to show that he had been an inmate of a hospital, and that he had consulted physicians, and as to the falsity of the statement prepared for his application. There was no evidence to the contrary, so the court had the right to take that evidence into consideration, *if* the application were not a forgery. Further, the court had the right to take into consideration the application for reinstatement, and the statements made therein, in which reference was made to the original application for insurance, and in which application for reinstatement the insured agreed "that all warranties, answers made to questions, and statements made in my application for membership in the Association shall be made a part of this Application for reinstatement." Whatever may have been the evidence of the plaintiff in the case, it left at least a question for the court to determine as to whether or not Bukowski had ever become a member, and, if he had become a member, had he made false statements such as to bar recovery?

This being the case, the court had the right to enter judgment as it was entered, and to take the action it took on the motions for directed verdict. The court under this record had the authority to find that no binding contract was ever entered into between Bukowski and the defendant. The defendant in its answer set up in paragraph 3, the paragraph omitted from the abstract, and which was admitted to be a correct statement of the facts, that this defendant was a fraternal beneficiary association, and that chapter 402 (section 8777 et seq.) of the code governs the carrying on of its business. Section 8791 of this chapter provides that such associations shall be governed by this chapter, and shall be exempt from the statutes of the state relating to life insurance companies, except as hereinafter provided.

Further, in this case, it was stipulated that J. M. Kirkpatrick, N. V. Abrahams, and A. E. Billings, officers of the association, relied upon the purported application for reinstatement and contents thereof, and believed that said application for reinstatement was the true application of Hans Maryan Bukowski, and that it contained his genuine signature, and, by reason of its reliance and belief, said assessments for the months of September, October, November, and December were accepted, and the certificate was issued.

It was contended in the case that, because some doctor who looked after matters locally for the lodge at Ottumwa examined Bukowski and made a favorable report, this is conclusive on the defendant, and they cannot go behind it. This thought comes from section 8770 of the Code, saying that, in any case where the medical examiner of a life insurance company or association shall issue a certificate of health or declare an applicant a fit subject for insurance, or so reports to the company or association, it shall be estopped from setting up in defense of the action on such policy or certificate that the assured was not in the condition of health required by the policy ·at the time of the issuance or delivery thereof

It is sufficient answer to this to say that this section of the statute is found under chapter 401 (section 8728 et seq.), devoted to life insurance companies and associations, and is no part of chapter 402, referring to the governing of fraternal beneficiary associations or societies. And this court has decided in the case of Smith v. Supreme Lodge, 123 Iowa 676, 99 N. W. 553, that this section of the statute had no application to benefi-

424

ciary societies or associations doing business under chapter 402 of the Code, and followed it in Sargent v. Modern Brotherhood of America, 148 Iowa 600, 127 N. W. 52. So the defendant in this case was not estopped from showing that the applicant was not in the state of health reported or stated in his application.

There was paid into the defendant company $72, which the defendant returned to the plaintiff on the theory that, as no insurance was ever effected, the plaintiff was entitled to the return of the money. This was returned, and no serious question seems to have been made on this in the court below, and we do not see how it could be greater, because the certificate was not received, certainly was not in force, if ever in force, until April 28, 1931, and the dues were only $8 per month. The 11th of December was the date of reinstatement, on which date all back dues were paid. It seems to us they were all paid, but, whether they were or not, the amount left was so insignificant as to have no material effect on this case.

Many other questions were argued by both parties, but the questions we have discussed are decisive of this case, and necessitate the overruling of the former opinion filed herein and written by the writer hereof, and an affirmance of the case. So for these reasons the decision of the district court of Wapello county in this case is hereby affirmed.—Affirmed.

DONEGAN, C. J., and ALBERT, KINTZINGER, POWERS, MITCHELL, and ANDERSON, JJ., concur.