# APPENDIX.

Draft: BLANK INDORSEMENT: LIABILITY OF INDORSER: COLLATERAL SECURITY.

*Appeal from Marshall District Court.*—HON. S. M. WEAVER, Judge.

FRIDAY, MAY 27, 1892.

ACTION against the defendant as indorser of a draft. There was a judgment for the plaintiff. The defendant appeals.—*Affirmed.*

*J. M. Parker*, for appellant.

*Binford & Snelling*, for appellee.

KINNE, J.—The defendant, Crabtree, sold cattle to one Jahnsen, who drew a draft against Rosenbaum Bros., of Chicago, consignees of the cattle, for their purchase price, of one thousand, seven hundred and seventy-eight dollars and forty-six cents. The draft was made payable to Crabtree. The bill of lading was also given to Crabtree by Jahnsen. Crabtree sold the draft to the plaintiff, indorsed it in blank, and also turned over to the plaintiff the bill of lading. The draft was by the plaintiff forwarded to its correspondent at Chicago, presented to Rosenbaum Bros., and payment refused. It was then protested, after which Rosenbaum Bros. paid them one thousand, five hundred and forty-five dollars and twenty-three cents, which was indorsed on the draft. This sum paid seems to have been the proceeds of the cattle shipped. The plaintiff then brought this action against Jahnsen and Crabtree for the balance due on said draft, and for protest fees. To the petition, which was in the usual form, the defendants answered jointly, averring that Jahnsen, the drawer of the draft, and the plaintiff, had some time before entered into an arrangement whereby the former had given the plaintiff certain collateral securities, notes and mortgages, aggregating two thousand, seven hundred dollars, and claiming that, by virtue of the contract under which said securities were held, they covered the sum sued for in this action; also claiming that the indorsement of the draft by Crabtree to the bank was in blank, and in fact without recourse. This agreement between the bank and Jahnsen was alleged to be partly in writing and partly oral. The oral part was that the bank, in consideration of the securities mentioned,

would pay the drafts of Jahnsen, or advance in cash the amount thereof, to the various customers of Jahnsen, and hold and take said securities as its indemnity for any amount thus advanced that it might not collect on said drafts in Chicago. The written portion of the agreement was evidenced by the following on the back of one collateral note: "This note is given as collateral to cover all notes and overdrafts, of every name and nature, that the maker hereof is now or hereafter may be owing the payee of the within note." And the following indorsement on the back of another collateral note: "This note, given as collateral security for all loans, overdrafts, advances of every name and nature, now due or to become due, made J. G. L. Jahnsen by the First National Bank, Marshalltown, Iowa, evidenced by the notes or books of said corporation." And by this indorsement on a collateral note given by the mother of said Jahnsen, and secured upon her real estate: "This note is given George Glick, trustee, to secure any money my son J. G. L. Jahnsen may now or hereafter owe the First National Bank of Marshalltown, Iowa; and the bank agrees to exhaust all the property by my son mortgaged to them before they call upon this security. Jan. 22, 1889." The plaintiff demurred to this answer on several grounds. They may be summarized as follows: *First.* That said counts did not aver payment, or plead any matter of defense. *Second.* That the fact that the plaintiff had security for the payment of the debt is no defense to its right to a judgment, nor is the fact of the plaintiff's agreeing to advance money to Jahnsen, as set out by defendants. *Third.* It is averred that the security held by the plaintiff was executed to it as security, and not as a payment of the debt sued on. *Fourth.* That the answer seeks to contradict and vary a written contract by parol, and no fraud or mistake is pleaded. *Fifth.* That said answer seeks to show by parol that the plaintiff undertook to pay the debt of Jahnsen to a third party. *Sixth.* That it cannot be shown by parol that Crabtree indorsed the draft in blank as a matter of form, and that there was no contract in relation to said indorsement between the bank and Crabtree. The demurrer was sustained, and the defendants excepted, and, standing upon their answer, judgment was entered against Jahnsen for the amount claimed. Crabtree also filed a separate answer, in which he makes substantially the same averments as in the joint answer, and also says he sold and transferred his cattle to Jahnsen, relying upon the agreements between Jahnsen and the bank. He especially pleads that said arrangement between Jahnsen and the bank secured the plaintiff to advance the money on behalf of Crabtree: also pleads that, in indorsing the draft to the plaintiff, it was agreed that it should be without recourse. Other allegations were made, not necessary to be stated. The court on motion of the parties, took the case from the jury. Judgment was rendered for the plaintiff against Crabtree, from which he appeals.

I. The defendant, Jahnsen, did not appeal. It is insisted that the court erred in taking the case from the jury. It seems to us that there was no dispute as to the facts which were material to this controversy. Whether that be so or not is immaterial, as the court discharged the jury after he had been asked to do so by both parties. In this action there was no error.

II. It is claimed by Crabtree, in his separate answer, that he relied upon the arrangement existing between the bank and Jahnsen in indorsing the draft, and hence should not be liable. We need not determine as to whether that arrangement was broad enough, as shown by the indorsements on the notes, to cover the liability in suit. The evidence fails to show that, in making his indorsement, he relied upon the contract existing between the bank and Jahnsen. Indeed, it appears he never knew of its existence until some days afterwards. Furthermore, the plaintiff proved without objection that the collaterals held by the bank were not to cover liabilities like that in the case at bar. It also appears from the evidence that the plaintiff had several other claims against Jahnsen, for which they held these collaterals; that, prior to this sale by Crabtree to Jahnsen, the plaintiff and Jahnsen had had a settlement, and the amount due the bank by Jahnsen, and which was not then evidenced by his note, was put in a note; and that the bank had no further deals with him. The evidence, taken altogether, shows that the collaterals put up by Jahnsen to the bank did not cover the sum for which it is sought to make Crabtree liable in this action.

III. It is claimed that Crabtree should have been placed in a position by the bank to be subrogated to its rights in the collaterals it held against Jahnsen. We have said that these collaterals were never intended to cover the claim in suit. It further appears that the bank offered to turn over to Crabtree all the collaterals it held against Jahnsen on payment by him of the amount Jahnsen owed it. Crabtree refused to accept this proposition. He did, however, offer to pay a part of the sum due by Jahnsen to the bank, and take the chattel mortgage and note it secured. This plaintiff refused to do. Under its contract with Jahnsen's mother, to have accepted Crabtree's proposition would have released her from liability to the bank. The defendant can not complain of the bank's action in surrendering to the Jahnsens collaterals in which he had no possible interest.

IV. Counsel for the appellant argues with much force that, as there was a bill of lading for the cattle attached to the draft, thereby new duties were cast upon the bank and new rights acquired by Crabtree; and he claims that the bank could not deliver the bill of lading until the draft was paid in full. Several cases are cited by counsel in support of his contention. We need not review all of them. A consideration of some of them will serve to illustrate why the rule contended for by the appellant is not applicable in this case. In *Emery's Sons v. Irving National Bank*, 25 Ohio St. 360, the court says: "We have no doubt, however, that if the bill of lading shows a consignment by vendor to vendee, and no other circumstance appears as to the intention, it will be taken as *prima facie* evidence of an unconditional delivery to the vendee." In that case it was held that there were other circumstances showing the intention of the consignor to reserve title to the property in himself. In Tiedeman on Commercial Paper, section 494, the doctrine is announced that if the carrier delivers the goods to the vendee in contradiction of the terms of the bill of lading, as where it provides for delivery only on payment of a bill of exchange, a delivery so made would not give a good title. The case of *Security Bank v. Luttgren*, 13 N. W. Rep. (Minn.) 151, was one where the

consignor made the shipment to himself. Evidence was also introduced touching the conditions agreed to by the bank at the time the bill of lading was given to it, from all of which facts the court held the bill was held by the bank as security. Whether or not the consignor has reserved the *jus disponendi* is to be determined, not only from the form of the bill of lading itself, but also in the light of the circumstances surrounding the transaction. Such we believe to be the established rule. *Emery's Sons v. Irving National Bank*, 25 Ohio St. 360; *Security Bank v. Luttgren*, 13 N. W. Rep. (Minn.) 151; 2 Daniel on Negotiable Instruments, 1734*a*; 2 Am. and Eng. Encyclopedia of Law, p. 241. Now, applying the law to the facts of this case, we find that Jahnsen consigned the cattle to Rosenbaum Bros., at Chicago, without, so far as the bill of lading shows, any limitations or restrictions as to delivery to them by the railroad company. Jahnsen swears he sent the cattle to Rosenbaum Bros., to be sold on the market; that he did not expect them to pay until they sold the cattle. Under the consignment the carrier was authorized to deliver the cattle to Rosenbaum Bros. without conditions. The evidence all shows that they were to be sold in the usual course of trade, and paid for when sold. Such being the fact, it is clear the plaintiff was not bound to hold the bill of lading until the draft was paid.

V. Crabtree also insists that, when he indorsed the draft to the bank, it was understood that he was not to be holden thereon; that it was without recourse on him. When Crabtree presented the draft to the bank, he was asked to indorse it, which he did. There is nothing to show that there was any arrangement, agreement, or understanding that he should not be liable on his contract of indorsement. It may be that Crabtree did not think the signing of his name on the back of the draft would render him liable as an indorser. His mistake as to the legal effect of his act could not prejudice the bank. In the absence of an agreement to the contrary, the law fixed his liability.

VI. In the joint answer of Crabtree and Jahnsen, from the facts pleaded, it is claimed that the indorsement of the draft by the former was in fact made without recourse. That is, it is said that the arrangement between the bank and Jahnsen precluded the idea of Crabtree's liability on his indorsement. The law in this state is settled that as between the parties to the contract of indorsements, when it is in blank, the real contract of the parties may be shown, even though the effect may be to relieve the indorser from all liability. *Harrison v. McKime*, 18 Iowa, 485; *James v. Smith*, 30 Iowa, 55. In another part of this opinion, we have held that the contract of Jahnsen with the bank, under which the collaterals were put up, was not available to Crabtree. In the joint defense, it is not even alleged that Crabtree made the indorsement on the faith of these collaterals, or that he had any knowledge of their existence.

VII. Some other questions raised by the ruling upon the demurrer have been discussed in treating of Crabtree's defense as presented in his separate answer. We have examined the record with reference to other assignments of error, and are content with the rulings of the lower court. The judgment of the district court will be AFFIRMED.