ASA BERRY, Appellee, v. J. M. GROSS, Appellant.

**BILLS AND NOTES:** Indorsement—Parol to Vary Blank Indorsement. Parol evidence that a blank indorsement of a nonnegotiable promissory note was made (1) for the sole purpose of transferring title to the note, and (2) under an agreement that the indorser should not be liable on the note, is not admissible *against a subsequent holder of the note* who had no knowledge of such agreement.

*Appeal from Decatur District Court.*—H. K. EVANS, Judge.

OCTOBER 18, 1921.

ACTION on a promissory note. The facts are stated in the opinion. Judgment for plaintiff, and the defendant, Gross, appeals.—*Affirmed.*

*Nesbitt & Johnston,* for appellant.

*Frank Wisdom, O. M. Slaymaker,* and *McGinnis & McGinnis,* for appellees.

STEVENS, J.—This is an action upon a promissory note, against Andrew and Anna Lames, makers, and J. M. Gross, payee, as indorser, and to foreclose a mortgage upon 287 acres of land in Decatur County, given to secure the payment of the note. Judgment was entered against the maker and the indorser, but a decree of foreclosure of the mortgage was refused. Gross alone appeals. The parties agree that the instrument in suit is nonnegotiable. The note, which is for $4,000, with interest at 6 per cent, was executed May 1, 1915, and matured November 1, 1917. On November 15, 1915, Gross assigned to William Roberts the mortgage executed to secure the payment thereof, and transferred the note to him by a blank indorsement, as collateral security for an existing indebtedness. On November 13, 1917, William Roberts, by written instrument, assigned the mortgage to M. E. Harris, and indorsed the note as follows: "I hereby assign the within note to.................without recourse on me." He then returned the note and mortgage to Gross. Prior to the redelivery of the note to Gross by Roberts, the former and M. E. Harris entered into an agreement in writing, for the exchange of real estate, by the terms of which Gross agreed to transfer the note and mortgage to Harris. On September 2, 1918, Harris assigned and delivered the note, without indorsement on the back thereof, to the Union Savings Bank of Redding, Iowa; and later, the bank sold and delivered the note to Asa Berry, plaintiff and appellee herein. All transfers were for a valid consideration, but only Gross and Roberts indorsed the note. Other necessary parties to the action to foreclose the mortgage were named in plaintiff's petition, and appeared and made defense in the court below; but, as the court held that the mortgage had ceased to be a lien upon the land described therein, and as the plaintiff has not appealed, their rights are not affected by this appeal.

Two principal defenses set up by the appellant in his answer and relied upon by him and urged in this court are as follows: (a) That it was orally agreed between Gross and Harris, at the

time of the delivery of the note to the latter, that Gross was to be completely relieved from liability, that the transfer was to be without recourse upon him, and that the note was accepted as full payment and settlement of the obligation created by the contract for the exchange of properties; and (b) laches.

Appellant testified concerning the transaction with Harris as follows:

"Q. State what you told Mr. Harris. A. I told Mr. Harris that the $4,000 note and mortgage was put up as collateral security with Mr. Roberts at the bank for money, and that this $4,000, or rather, the $1,000 mortgage, had been started foreclosure, had been started on that by Mr. Annis, and the time of redemption was not yet out. Also, that I would have Mr. Roberts indorse this note and mortgage over from him to Harris, and not coming back through me at all. Also, that I would not be responsible at all for the note and mortgage; would guarantee the value to be in the land but I was not responsible in any way for the note; and in the talk with Mr. Roberts, Mr. Roberts asked me if I wanted to sign that without recourse. I told him to sign without recourse below his name, and that would cover it all. This is the way I turned it over to Mr. Harris. Q. Did Mr. Harris accept this note with the understanding that you have just related? A. Yes, sir. * * * The matter of the transfer between myself and Harris was simply to transfer title from me to Harris."

The court below, in a written opinion, held that this evidence was inadmissible, and that the alleged oral agreement between appellant and Harris was not available as a defense to plaintiff's cause of action.

We will first inquire as to the admissibility of parol evidence to show that the agreement between appellant and Harris was different from that arising under Section 3048 of the Code, and implied by law. As already stated, appellant indorsed the note in blank, and delivered it to Roberts, together with the mortgage executed to secure its payment, as collateral security for the payment of an existing indebtedness; and later, the note and mortgage and a written assignment of the mortgage, signed by Roberts, were returned by him to Gross, who delivered them to Harris.

Subject to the qualifications and exceptions hereafter noted, parol evidence of the actual contract or agreement between a blank indorser of either a negotiable or nonnegotiable note and his immediate indorsee, although it may tend to vary or modify the contract implied by law, has long been held to be admissible in this state. *Harrison v. McKim,* 18 Iowa 485; *Huse v. Hamblin,* 29 Iowa 501; *James v. Smith,* 30 Iowa 55; *Geneser v. Wissner,* 69 Iowa 119; *Evans v. Burns,* 67 Iowa 179; *Truman v. Bishop,* 83 Iowa 697; *First Nat. Bank v. Crabtree,* 86 Iowa 731; *Lynch v. Mead,* 99 Iowa 66; *Iowa Val. St. Bank v. Sigstad,* 96 Iowa 491; *Farmers Sav. Bank v. Wilka,* 102 Iowa 315; *Farmers Sav. Bank v. Hansmann,* 114 Iowa 49; *German Am. Sav. Bank v. Hanna,* 124 Iowa 374.

The exceptions referred to are as follows: Parol evidence is not admissible to show that no contract of any description was entered into or intended by a blank indorsement *(Geneser v. Wissner,* supra; *Evans v. Burns,* supra); and such evidence is admissible only in an action between the immediate parties to the agreement. *Skinner v. Church,* 36 Iowa 91; *James v. Smith,* 30 Iowa 55; *First Nat. Bank v. Crabtree,* supra. A provision in a note by which the indorsers waived presentment of payment, notice of nonpayment, protest and notice of protest, and due diligence in bringing suit, is the equivalent of an indorsement in full, and parol evidence to show a different agreement is not admissible. *Iowa Val. St. Bank v. Sigstad,* supra; *Farmers Sav. Bank v. Wilka,* supra. The rule, so far, at least, as it was applicable to negotiable instruments, was abrogated by the enactment of the uniform Negotiable Instrument Law. *Porter v. Moles,* 151 Iowa 279. The instrument involved in each of the above cases was a negotiable promissory note.

Much emphasis is placed by appellant upon his contention that the Negotiable Instrument Law has no application to nonnegotiable instruments, and therefore that *Porter v. Moles,* supra, is not an authority in this case. To what extent this contention must be upheld is not very material to the present discussion. The Negotiable Instrument Law is a codification of common-law rules, and, whether or not it is applicable to nonnegotiable instruments, the rules in many instances must be the same. The most important distinction between the two kinds of instruments

is that nonnegotiable instruments are subject to certain defenses in the hands of a holder without notice; whereas a bona-fide holder of a negotiable instrument without notice is protected against the same. While the point was not directly involved in *Park v. Best,* 176 Iowa 7, which was an action against a blank indorser of six certificates of deposit, which were treated by the parties and the court—without, however, so holding—as nonnegotiable, the rule was recognized. No reference was made therein to *Porter v. Moles,* supra.

As previously stated, the oral agreement relied upon by appellant was entered into between Gross and Harris, and, so far as the record discloses, was unknown to appellee at the time he acquired the note from the bank. Unless a distinction may be made in the rule announced in *Skinner v. Church,* supra, between negotiable and nonnegotiable instruments, the agreement between Gross and Harris was not admissible in an action brought by Berry against Gross as the original indorser. No distinction occurs to us. The liability of an indorser of a nonnegotiable instrument is direct and positive, and equivalent to the execution of a new note. *Long v. Smyser & Hawthorne,* 3 Iowa 266; *Wilson v. Ralph,* 3 Iowa 450; *Billingham v. Bryan,* 10 Iowa 317; *Allison v. Hollembeak,* 138 Iowa 479. And the holder may maintain an action against each or all of the indorsers. *Lynch v. Mead,* supra; *Huse v. Hamblin,* supra. The liability of indorsers is definitely fixed by the uniform Negotiable Instrument Law. Demand, notice of nonpayment, and protest are necessary to charge an indorser of negotiable paper, unless the same is waived upon the face of the instrument or by the indorsement; whereas notice and protest of a nonnegotiable instrument are not necessary. *Huse v. Hamblin,* supra; *Long v. Smyser & Hawthorne,* supra; *Billingham v. Bryan,* supra.

The agreement relied upon by Gross, so far as it was binding at all, was restricted to himself and Harris, and could not be interposed as a defense to this action. Furthermore, parol evidence was not admissible to show that the transfer by Gross to Harris was for the purpose of transferring title only.

The note in suit contained the following provision:

"Upon default of payment of this note, the makers, indorsers, guarantors, and sureties, agree to pay all attorneys'

fees and expenses of collection and consent that any justice of the peace may have jurisdiction on this note to the amount of $300 and I do hereby severally waive demand of payment, protest, and notice of protest of this note and consent that time of payment may be extended without notice.''

We held, in *Iowa Val. St. Bank v. Sigstad,* supra, that:

''When the defendant put his name on the back of the note, without more, he became a party to the paper, and was bound by all its provisions. These provisions of the note then formed a part of his contract of indorsement, and he was as fully bound by them as he could have been, had they been placed upon the back of the note and his name then been written under them.''

This is as true of a blank indorser of a nonnegotiable note as of the blank indorser of one that is negotiable. It is true that the waiver of notice of nonpayment, protest, and notice of protest is without the same significance in an indorsement of a nonnegotiable note; but the defendant agreed by his indorsement to pay the attorney fees, and that time might be extended for the payment of the note without notice. The point is that the indorsement ceased, in legal effect, to be a mere indorsement in blank. All that appeared on the face of the note was as much a part thereof as though it had been written over his signature, and therefore the alleged oral agreement was not admissible. *German Am. Sav. Bank v. Hanna,* 124 Iowa 375, and cases cited supra.

We need not discuss the effect of the enactment of the uniform Negotiable Instrument Law upon the question of the admissibility of parol evidence to vary or alter the implied obligations of a blank indorser of a simple nonnegotiable promissory note, as what is said above disposes of the appeal.

The claim of laches is without merit.

For the reasons already pointed out, the judgment of the court below must be and is—*Affirmed.*

EVANS, C. J., ARTHUR and FAVILLE, JJ., concur.