ROBERT L. LEACH, Superintendent of Banking, Appellee, v.
PLYMOUTH COUNTY SAVINGS BANK OF LE MARS, Appellee;
MARTIN W. ORTON, Intervener, Appellant.

**BILLS AND NOTES:** Transfer—Indorsement in Blank—Parol Ex-
1 planation. Parol evidence is admissible to show that an indorse-
ment in blank of commercial paper was made solely to enable the
holder to make collection, and not to transfer title. Especially is
this true when the other writings accompanying the indorsement
are ambiguous. (See Book of Anno., Vol. 1, Sec. 9494, Anno. 2.)

**RECEIVERS:** Title to Property—Commercial Paper Held for Collec-
2 tion. The receiver of an insolvent bank takes no title to commer-
cial paper coming into his hands and received by the bank for
collection only.

**Headnote 1:** 22 C. J. pp. 1093, 1255. **Headnote 2:** 7 C. J. p. 742
(Anno.)

*Appeal from Plymouth District Court.*—C. C. BRADLEY, Judge.

FEBRUARY 16, 1926.

ACTION by intervener to recover from the receiver two prom-
issory notes and the proceeds of a third note. The court re-
fused the prayer of intervener's petition, and he appeals.—
*Reversed.*

*T. M. Zink,* for appellant.

*Ben J. Gibson,* Attorney-general, *J. T. Keenan,* and *Rose-
berry & Roseberry,* for appellee Leach.

ALBERT, J.—On June 27, 1924, one Peter Van der Wel
executed three promissory notes for $800 each to the intervener,
Orton, maturing respectively on February 1 and December 1,

1. BILLS AND
NOTES: trans-
fer: indorsement
in blank: parol
explanation.

1925, and February 1, 1926. On December 12, 1924, the intervener indorsed the three notes to the Plymouth County Savings Bank of Le Mars, Iowa, in blank. At the same time a written agreement was made, as follows:

"Le Mars, Iowa, December 12th, 1924.

"This agreement made and entered into this 12th day of December, A. D. 1924, between M. W. Orton, party of the first part and Plymouth County Savings Bank, Le Mars, Iowa, party of the second part.

"In consideration of one dollar in hand paid the receipt of which is hereby acknowledged by party of the second part. Party of the first part hereby sells, assigns and transfers and guarantees the payment of three notes for $800 each signed by Peter Van der Wel and due as follows: One note due February 1st, 1925, one note due December 1st, 1925, and one note due February 1st, 1926.

"It is hereby agreed that a certificate of deposit for $2,400 issued by the party of the second part shall be held by and as collateral for the payment of the three notes above described.

"Party of the second part will make the collections of all payments on above notes and indorse same on the certificate of deposit issued by party of the second part.

"Witness our hands and seals this 12th day of December, 1924.

"M. W. Orton, Party of the First Part.
"Plymouth County Savings Bank of Le Mars, Iowa,
          "By V. J. Martin, President,
                              "Party of the Second Part."
"Witness, Ed Durband,
    "B. G. Pannkuk."

Pursuant to the terms thereof, a certificate of deposit for $2,400 was made by the bank to Orton, payable to his order on return of the certificate, properly indorsed, on February 1, 1926 (this being the due date of the last note). This certificate never passed into the hands of Orton, but was held by the bank in pursuance of the terms of the aforesaid contract. Later, the

said bank was declared insolvent, and Robert Leach, superintendent of banking, was appointed receiver therefor.

At the time the receiver took possession of the bank, these three notes were still unpaid, and passed into his hands as such receiver. As a matter of bookkeeping, they were entered on the "bills receivable register." This was necessary, to keep the books in balance, by reason of the issuance of the aforesaid certificate of deposit. The receiver collected the first note, and at the time of trial was still in possession of the other two. The action of the intervener is to recover from the receiver the amount collected on the first note, and possession of the other two notes still held by him. The claim of the receiver is that the bank bought these notes in due course of business, and thereby became the owner of the same, and that the intervener has no right whatever in them; that he is simply a depositor in said bank under the certificate aforesaid. The intervener claims that these notes were turned over to the bank for collection only, and that the bank never became the owner, nor is the receiver now the owner of the same; but that at all times the intervener was the actual owner thereof; that, equally, he is the owner of the proceeds now in the hands of the receiver.

The case was tried on a stipulated record, aided by some oral testimony. So far as material, this stipulated record shows that the notes were delivered to the bank; that the receiver collected the first note and indorsed the proceeds thereof on the certificate of deposit. The other two notes and the certificate of deposit, together with the written agreement between the bank and the intervener above referred to, were all introduced in evidence.

Krouth, the acting receiver, testified that he collected the first note and had not paid the proceeds to the intervener; that the bank's records showed that the three notes were entered as assets of the bank, and the certificate of deposit as a liability, when he took possession of the bank.

Durband, a witness, testified that he was present when the transaction between the intervener and the bank with reference to the notes in controversy occurred. Over objection, he was permitted to testify that Martin (the president of the bank), who had the matter in charge, said that, as fast as the notes were

paid, he would indorse the amounts on the certificate of deposit and send the proceeds to Mr. Orton, and further stated that he would not charge anything for his trouble; that he was doing it as an accommodation; and that there would not be any interest on the certificate of deposit.

Orton, the intervener, testified that the three notes and the aforesaid agreement were left with the bank, and none of them had been in his possession since. He further says:

"Mr. Martin and I entered into an agreement that the bank was to take the notes, and as they were paid, the amount paid was to be credited on the certificate of deposit and the proceeds sent to me; and I told Mr. Martin this was all right, and this was my intention and understanding. I never had a copy of the contract."

The first question discussed is the question of whether the parol testimony given by Durband and Orton was admissible in evidence. A reading of the contract leaves us much in doubt as to what the real transaction was. The contract provides that a certificate of deposit is to be made to Orton for $2,400; that, as the notes are paid, the proceeds are to be indorsed upon the certificate of deposit. It is apparent, therefore, that, when the notes are all paid and the indorsements made on the certificate of deposit, the certificate will also be paid. There is no provision in the contract that the money, as fast as collected or when all is collected, is to be paid to Orton. The question we have to determine is, What was the real transaction between these parties? As heretofore stated, the receiver claims that it was a sale of the notes to the bank, and that the title and ownership thereof passed to the bank. The intervener claims otherwise.

On the intervener's contention that it was not a sale of the notes to the bank, but simply an arrangement for the bank to make the collection and turn the proceeds over to the intervener, we think this parol testimony was admissible. The transaction itself, as evidenced in this record, leads us to the conclusion that the intervener's contention in this respect is right. When the evidence, the contract, and the certificate of deposit are read together, it is quite apparent that the bank was under no liability whatever to the intervener unless the notes were paid. Indorsements in blank made on commercial paper frequently occur for

the purpose of turning it over to the indorsee for collection only, and it is a settled rule in this state, as well as elsewhere, that, where an indorsement is in blank, parol evidence is admissible to show that it was an indorsement for collection only. *Harrison v. McKim,* 18 Iowa 485; *Geneser v. Wissner,* 69 Iowa 119; *Berry v. Gross,* 192 Iowa 300; *James v. Smith,* 30 Iowa 55; *Truman v. Bishop,* 83 Iowa 697; *First Nat. Bank v. Crabtree,* 86 Iowa 731.

It is to be kept in mind that this matter arises wholly between the indorser and his immediate indorsee. The receiver, of course, stands in the shoes of the indorsee. We are satisfied, under the above authorities, that the parol evidence offered was admissible.

Taking this transaction as it appears from the record, we are abidingly satisfied that these notes were left with the bank for collection only, and that they passed into the hands of the receiver of the bank in exactly that condition. In other words, the receivership did not change the relation between the bank and the intervener. They were and are, in our judgment, the property of the intervener, and he was entitled to possession of the notes; or, if the notes had been paid, to the proceeds thereof.

2. Receivers: title to property: commercial paper held for collection.

The lower court erred in refusing the prayer of the intervener's petition, and the case is, therefore, reversed.—*Reversed.*

De Graff, C. J., and Evans and Morling, JJ., concur.